UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ANTHONY CURCIO,
   a/k/a "Brendan Wooley," and

IOSIF BONDARCHUK,
   a/k/a "Joe Bondarchuk,"

                Defendants.

**SEALED INDICTMENT**

24 Cr. ___ ( )

**24 CRIM 312**

### COUNT ONE
### (Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

### OVERVIEW

1. From at least in or about 2022 through at least in or about May 2024, ANTHONY CURCIO, a/k/a "Brendan Wooley," and IOSIF BONDARCHUK, a/k/a "Joe Bondarchuk," the defendants, engaged in a fraudulent scheme to defraud buyers and marketplaces to purchase sports and Pokémon trading cards at false and inflated prices by misrepresenting that low-to-mid grade cards had received high-grade ratings from a reputable card authentication company ("Company-1"), thereby causing victims to pay more money for the cards than they otherwise would have. In total, CURCIO and BONDARCHUK attempted to deprive victims of over $2 million through their sales and attempted sales by misrepresenting the grade of numerous trading cards.

2. Sports and Pokémon trading cards containing the images of professional athletes and Pokémon can have considerable collectible and resale value depending on, among other things, their condition and authenticity. Company-1 is a prominent card authenticator and grader. For a

fee, Company-1 verifies a card's authenticity, assesses its condition, and assigns it a numerical grade from one to ten, with one being the lowest grade and ten being the highest grade. The grade assigned is reflective of the card's comparative market value. After grading a card, Company-1 seals the card in a distinctive, tamper-resistant plastic case that encloses the card to preserve its condition and indicates its grade on an affixed label.

3. The card grade assigned by Company-1 significantly impacts the market value of the card. As an example, a 1986 Fleer Michael Jordan #57 card graded as an 8 has an estimated market value of between $6,000 and $7,000. But this same card, when graded as a 10 by Company-1, has had an estimated market value of between approximately $185,000 and $203,000. In short, representations about Company-1's grade of the card go directly to the value of the card itself and the price at which the card can be bought and sold.

4. ANTHONY CURCIO, a/k/a "Brendan Wooley," and IOSIF BONDARCHUK, a/k/a "Joe Bondarchuk," the defendants, sold and attempted to sell sports and Pokémon trading cards through, among other means, an online card marketplace based in Manhattan (the "Manhattan Marketplace"). Through the Manhattan Marketplace, CURCIO and BONDARCHUK sold various cards at inflated prices by falsely claiming the cards had been assigned higher ratings by Company-1 than was true.

5. Among the cards that ANTHONY CURCIO, a/k/a "Brendan Wooley," and IOSIF BONDARCHUK, a/k/a "Joe Bondarchuk," the defendants, sold as part of the scheme through the Manhattan Marketplace was a 1986 Fleer Michael Jordan #57 card (the "1986 MJ Card"). In or about May 2022, CURCIO advertised one version of the 1986 MJ Card on the Manhattan Marketplace for sale for the amount of $171,700, as pictured below.



As is depicted above, CURCIO advertised the 1986 MJ Card as having a purported grade of "10" assigned by Company-1. In truth and in fact, CURCIO knew that Company-1 had not assigned this grade to the card. To make it appear that the 1986 MJ Card had received a grade of 10 from Company-1, CURCIO caused the 1986 MJ Card to be displayed in in the distinctive, tamper-resistant plastic case of Company-1 with a labeled rating of 10, when, in reality, the 1986 MJ Card he was offering for sale had received no such rating from Company-1. Through this fraudulent scheme, CURCIO made these misrepresentations to fraudulently inflate the card's value and induce victims to pay more money for the 1986 MJ Card than they otherwise would have paid.

To further make it appear that the 1986 MJ Card had received a rating of 10 from Company-1, CURCIO caused a purported Company-1 label to be included in the plastic case, along with a fraudulent bar code and certification number.

6. At all times relevant to this Indictment, when victims demanded refunds and confronted ANTHONY CURCIO, a/k/a "Brendan Wooley," and IOSIF BONDARCHUK, a/k/a "Joe Bondarchuk," the defendants, over the fraudulent cards, including by showing CURCIO and BONDARCHUK confirmations from Company-1 that CURCIO and BONDARCHUK had misrepresented the grade of the cards, CURCIO and BONDARCHUK feigned ignorance and often refunded the victims. Yet, after being put on notice that the cards' grades and labels were fraudulent, CURCIO and BONDARCHUK repeatedly attempted to, and did, sell these very same cards to subsequent victims, again with fraudulent labels showing an inflated grade from Company-1.

7. At all times relevant to this Indictment, ANTHONY CURCIO, a/k/a "Brendan Wooley," and IOSIF BONDARCHUK, a/k/a "Joe Bondarchuk," the defendants, sold and attempted to sell fraudulent cards using several different methods, including online sales through the Manhattan Marketplace. CURCIO and BONDARCHUK defrauded the Manhattan Marketplace through approximately $225,000 in fraudulent sales to at least eight buyers, a portion of which the Manhattan Marketplace paid to compensate buyers who had been defrauded through CURCIO and BONDARCHUK's sales. CURCIO and BONDARCHUK repeatedly sent a variety of interstate wires into and out of Manhattan in furtherance of the fraud, including posts on the Manhattan Marketplace's website, messages to website administrators, and messages to individual victims through the website's messaging portal. CURCIO and BONDARCHUK also sold and attempted to sell fraudulent cards at in-person card shops, auctions, and card shows. CURCIO

further sold and attempted to sell fraudulent cards through other online platforms using third-party sellers, including a co-conspirator not named as a defendant herein ("CC-1"). In these instances, CURCIO agreed to pay the third-party sellers a commission on sold cards.

8. At all times relevant to this Indictment, in addition to fraudulently misrepresenting the Company-1 grade of sports trading cards, ANTHONY CURCIO, a/k/a "Brendan Wooley," and IOSIF BONDARCHUK, a/k/a "Joe Bondarchuk," the defendants, fraudulently misrepresented the Company-1 grade of Pokémon trading cards to induce victims to pay more money for the cards than they otherwise would have paid. Among the fraudulent cards that CURCIO, BONDARCHUK, and CC-1 sold and attempted to sell are a 1999 Pokémon Venusaur card and a 1999 Pokémon Charizard card, pictured below.

 

In or about July 2023, as part of a law enforcement undercover purchase of the above fraudulently misrepresented 1999 Pokémon Venusaur card for $10,500—which card BONDARCHUK had

previously attempted to sell on an online marketplace—CURCIO mailed the card to the undercover law enforcement purchaser at an address in Manhattan after the undercover purchaser wired the money to a bank account that CURCIO controlled.

9. Further examples of sports trading cards with inflated, misrepresented Company-1 grades that ANTHONY CURCIO, a/k/a "Brendan Wooley," and IOSIF BONDARCHUK, a/k/a "Joe Bondarchuk," the defendants, sold and attempted to sell include a Stephen Curry rookie card and a card featuring Larry Bird, Julius Erving, and Magic Johnson, which are pictured below in the false Company-1 casings that CURCIO and BONDARCHUK advertised.

 

10. From at least in or about 2022 through at least in or about May 2024, ANTHONY CURCIO, a/k/a "Brendan Wooley," and IOSIF BONDARCHUK, a/k/a "Joe Bondarchuk," the defendants, repeatedly used fake names and identities in order to conceal their involvement in the fraudulent scheme. For example:

a. In or about March 2023, after a victim complained to BONDARCHUK about BONDARCHUK's sales of fraudulent cards, including a Tom Brady rookie card, a John Elway rookie card, and various Michael Jordan cards, BONDARCHUK provided the victim CURCIO's phone number but falsely told the victim that the phone number purportedly belonged to another individual who, in reality, was a Washington-based leader of the Hells Angels motorcycle ring.

b. In or about May 2023, after a victim complained to BONDARCHUK about BONDARCHUK's sales of fraudulent cards, including a 1968 Topps Nolan Ryan/Jerry Koosman rookie card, BONDARCHUK provided the victim CURCIO's phone number but falsely told the victim that the phone number belonged to BONDARCHUK's purported partner, "John Steel."

c. In or about April 2024, at a card show in New Jersey, CURCIO provided a business card to a potential victim buyer, falsely claiming to be "Brendan Wooley" and listing, among other identifiers, a phone number and LinkedIn page purportedly belonging to "Brendan Wooley." In truth and in fact, CURCIO—and not "Brendan Wooley"—created and operated the LinkedIn page and controlled the phone number.

11. From at least in or about 2022 through at least in or about May 2024, ANTHONY CURCIO, a/k/a "Brendan Wooley," the defendant, ordered from an online marketplace various items needed to create forged card cases and labels. The items included various card grading cases, thermal transfer barcode labels, a magnifier loupe optical glass, a handheld inkjet printer, a lock-cutting kit, an electric grinding pen, an abrasive buffer and polishing wheel, an abrasive and bristle brushes, and drill bits designed for engraving.

## STATUTORY ALLEGATIONS

12. The allegations contained in paragraphs 1 through 11 of this Indictment are

repeated and realleged as if fully set forth herein.

13. From at least in or about 2022 through at least in or about May 2024, in the Southern District of New York and elsewhere, ANTHONY CURCIO, a/k/a "Brendan Wooley," and IOSIF BONDARCHUK, a/k/a "Joe Bondarchuk," the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

14. It was a part and an object of the conspiracy that ANTHONY CURCIO, a/k/a "Brendan Wooley," and IOSIF BONDARCHUK, a/k/a "Joe Bondarchuk," the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, in order to induce victims to pay more money for sports and Pokémon trading cards than they otherwise would have paid, CURCIO, BONDARCHUK and others agreed to and did make and cause to be made false statements regarding the grade assigned to the cards by Company-1, when, in truth and in fact, CURCIO, BONDARCHUK and their co-conspirators knew that Company-1 had not assigned the grade to the cards that they represented.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

The Grand Jury further charges:

15. The allegations contained in paragraphs 1 through 11 of this Indictment are

repeated and realleged as if set forth fully herein.

16. From at least in or about 2022 through at least in or about May 2024, in the Southern District of New York and elsewhere, ANTHONY CURCIO, a/k/a "Brendan Wooley," and IOSIF BONDARCHUK, a/k/a "Joe Bondarchuk," the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, in order to induce victims to pay more money for sports and Pokémon trading cards than they otherwise would have paid, CURCIO and BONDARCHUK made and caused to be made false statements regarding the grade assigned to the cards by Company-1, and aided and abetted the same, when, in truth and in fact, the defendants knew that Company-1 had not assigned the grade to the cards that they represented.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATIONS

17. As a result of committing the offenses alleged in Counts One and Two of this Indictment, ANTHONY CURCIO, a/k/a "Brendan Wooley," and IOSIF BONDARCHUK, a/k/a "Joe Bondarchuk," the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

## Substitute Assets Provision

18. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

_____
Foreperson

_____
DAMIAN WILLIAMS
United States Attorney