UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY CURCIO <br><br> Defendant. | No. 24-CR-312 <br><br> REPLY MEMORANDUM IN SUPPORT OF MOTION FOR HEARING PURSUANT TO *FRANKS V. DELAWARE* <br><br> [CLERK'S ACTION REQUIRED] |

Comes now the defendant, Anthony Curcio, through counsel, and submits this Reply Memorandum in support of his motion asking this court for an order setting a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

## I. SUPPLEMENTAL DECLARATION

Attached as Appendix A to this reply is a supplemental declaration of counsel. This declaration addresses false or misleading statements included in the search warrant affidavit submitted by Special Agent (SA) Christopher Campbell in support of his application to search Mr. Curcio's residence in May of 2024.

The Government is aware of most if not all the information in the supplemental declaration, as it is drawn from discovery they have provided. The declaration addresses SA

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 1

**KRADEL DEFENSE PLLC**
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

Campbell's false and misleading statement regarding events at a card show in New Jersey in April of 2024, as well as SA Campbell's knowledge that numerous trading cards that are described as being "fraudulent" in his affidavit are cards that PSA – the "reputable card authentication company" – had previously authenticated, only to un-authenticate them after learning that Mr. Curcio was the individual selling the cards. It also addresses SA Campbell's knowledge that items purportedly ordered and delivered to Mr. Curcio's residence were not capable of creating forged card cases and labels, contrary to his assertion in the affidavit.

II.  THE GOVERNMENT RESPONSE PERPETUATES THE FALSE NARRATIVE OF SA CAMPBELL'S AFFIDAVIT.

The Government's response to the motion for a *Franks* hearing characterizes the defense argument as being based upon "superficial and illogical theories" and "unsupported conclusory allegations." What the defense motion presented was evidence that SA Campbell's search warrant affidavit omitted material information about the interests and credibility of the sources the FBI was relying upon in their investigation, and the way interested parties were permitted to steer an investigation to target Mr. Curcio. Though the Government uses harsh language in attacking the defense motion, their response is devoid of any substantive answer to why SA Campbell failed to disclose to the magistrate the roles and motivations of the sources upon which he relied.

This is important to an evaluation of whether the defense has established the need for a *Franks* hearing, but that is just the legal consequence at stake. Mr. Curcio's life has been destroyed by the charges in this case, and the omissions from the search warrant affidavit are only one manifestation of how a false accusation against an individual can be bolstered and

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 2

KRADEL DEFENSE PLLC
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

pushed ahead when individuals and entities with ulterior motives are permitted to substitute their "investigation" for that of an independent law enforcement agency.

### A. The Government Knows SA Campbell's Affidavit Was Parroting PSA's Claims Against Someone Accusing PSA of Wrongdoing.

The Government cannot deny that PSA is the "card authentication company" referenced in SA Campbell's affidavit – because they know it is true. They cannot deny that PSA was acting in concert with other individuals to improperly retain Mr. Curcio's property prior to the application for a search warrant – because they know it is true. The Government also knows that PSA delivered a PowerPoint presentation to the FBI to gain the assistance of the agency in targeting Mr. Curcio.

The Government knows that PSA destroyed evidence by altering the case holders for items that company improperly retained that belonged to Mr. Curcio – both harming the value of that property and preventing the evaluation of claims made about the condition of those items. And the Government knows that throughout the investigation in this case PSA and others who were engaged in ongoing litigation with Mr. Curcio – and being accused by him of wrongdoing – were acting as informants and de facto agents of the Government. These are all material facts that would have been critical for the magistrate evaluating the application for a search warrant to know.

### B. The Affidavit Inaccurately Portrays Curcio As a Fraudster

There is a fundamental and deliberate misrepresentation at the heart of Agent Campbell's affidavit. Campbell's affidavit misleadingly implies that Anthony Curcio sold counterfeit cards to unsuspecting buyers, who later discovered they were victims of fraud. This narrative is false. Nearly every transaction was first verified and authenticated by PSA,

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 3

KRADEL DEFENSE PLLC
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

the very company at the center of these allegations, before any sale commenced. Critically, what PSA authenticated was not merely third-party cards but their own proprietary products: their labels, certifications, and sealed cases. PSA should have been the best source available to confirm the authenticity of its own labels and encapsulated cases, making their role uniquely authoritative. Yet Campbell's affidavit obscured PSA's central involvement and verification prior to sales, fundamentally distorting the context in which these transactions occurred and falsely portraying Curcio as defrauding buyers.

The Government's response to this motion, rather than addressing the merits of Campbell's omissions, simply dismisses these concerns outright, stating: "Curcio's speculative and far-fetched claims provide no basis for a Franks hearing." (Gov't Resp. at 2). Yet none of these claims are far-fetched or speculative; indeed, the facts Agent Campbell deliberately concealed are explicitly documented by the prosecution's own evidentiary production. The government is fully aware of these contradictions but chose to ignore them.

1. ***MySlabs/PSA dispute***

The first alleged "fraudulent transaction" referenced by SA Campbell in his affidavit involved a Michael Jordan trading card sold by Curcio on the MySlabs platform. After a competing card owner raised questions about authenticity due to dissatisfaction over the sale price, PSA abruptly "deactivated" the card's certification number before Curcio had an opportunity to submit it for inspection, effectively voiding their own authenticity guarantee. Curcio privately expressed frustration to MySlabs CEO Matt Greaney, suggesting he might publicly expose PSA's flawed guarantees and questionable practices. This information was shared with SA Campbell by Greany.

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 4

KRADEL DEFENSE PLLC
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

### 2. PSA fabricates evidence (eBay images, standards)

When PSA decided to reverse the authenticity of Curcio's previously authenticated and graded cards, they faced a significant obstacle: PSA had maintained no records from when they graded the cards. In an interview, PSA CEO Nat Turner stated "Pre 2020-2021 we (PSA) weren't even taking pictures of cards before or after grading." They possessed no internal photographs of the card, no documentation of label or case combinations, no quality-control standards or recorded variances from the time the cards were initially authenticated. Instead of acknowledging this critical gap, PSA's Brand Protection team, utilizing their partnership with eBay, manufactured documentation which cannot be relied on. Ebay's database of past auctions- which included only user provided photos, not cards physically examined by PSA, became what was determined by PSA to be "REAL."

USAO_000014749

Oftentimes, these images PSA relied upon to determine authenticity were taken on kitchen countertops of the unknown eBay user that had provided them from a decade prior, or such poor quality they couldn't determine if a PSA proprietary logo was on the case which encapsulated the card in question. Regardless, PSA labelled Curcio's cards "FAKE." This PowerPoint presentation PSA gave to SA Campbell on Dec. 5, 2022 via zoom was also provided to the agent to use as a reference guide throughout the 'investigation.'
In this document, the company invented entirely new criteria, such as spacing, kerning, and label formatting, standards which were not part of PSA's standard authentication process.

### 3. *Curcio Submits Cards in Good Faith; PSA Responds w/Silence & Property Destruction*

In the wake of the MySlabs dispute, Anthony Curcio proactively submitted several of his PSA-graded cards for reholdering, hoping to avoid future embarrassment from
REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 5

KRADEL DEFENSE PLLC
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

authenticity disputes. At the time, he had no idea PSA was accusing him of counterfeiting. PSA accepted the cards, logged them into their system, and advanced them through their standard grading workflow. Internal records confirm the cards were authenticated by multiple PSA graders, passed "Research and ID," and entered "Assembly"—the final step before re-encapsulation and return.



PSA halted the card's processing prior to shipping the authenticated cards back to Anthony. PSA kept the cards, and despite inquiries after the unexpected delay, chose not to response to Curcio about of any concerns, a stark contrast to Campbell's affidavit that Anthony was put on notice.

The motivation behind PSA's behavior - to hold on to a customers property, then not respond- had been unclear prior to discovering a PSA admission to Campbell: PSA had accidently "cracked the corner" and damaged one of Curcio's most valuable cards.

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 6

KRADEL DEFENSE PLLC
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com



In another admission to Agent Campbell, PSA acknowledged that Curcio had an active and escalating dispute with the company at the time they initiated contact with the FBI. PSA also shared with SA Campbell that Curcio wasn't just threatening legal action—he was openly critical of PSA's practices and had begun referencing their so-called "security features" and "guarantees" in communications, raising a serious reputational threat for the company. In a revealing moment, the PSA employee asked Campbell, *"Curcio is requesting we return his items. What can/should we do in this situation?"*—a question that laid bare both the impropriety of their position and their intent to avoid legal scrutiny. Instead of directing PSA

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 7

KRADEL DEFENSE PLLC
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

to legal counsel, Campbell inserted himself into the decision-making process, and PSA ultimately decided to withhold Curcio's authenticated property without a subpoena, seizure order, or any other lawful basis.

> From: ████████████@collectors.com>
> Sent: Friday, December 9, 2022 1:37:20 PM
> To: ████████████████████████████ (NY) (FBI) ████████@fbi.gov>
> Cc: ████████████████████████@collectors.com>
> Subject: Re: [EXTERNAL EMAIL] - Counterfeit and Tampered PSA Cards
>
> Hi Chris and Rigel,
>
> Our Customer Service Team was reached out to by Curcio about a month ago. In his email to us, he expresses his frustration that his Reholder submissions we currently have are not moving and ==threatens to take legal action/ call us out publicly.== Interestingly, he references our security features again in this email: "The ridiculous security features, lighthouse technology, micro printed fugitive ink or 'special plastic slabs". ==Curcio is requesting we return his items. What can/should we do in this situation?==
>
> Kind regards,

Instead of addressing its dispute with Curcio through proper legal channels, like they did with others, PSA decided to feed the FBI criminal allegations, while also asking the agent tasked with the criminal "investigation" on how to handle Curcio's repeated requests for the return of his property. This was not a good-faith inquiry. PSA's decision to bypass internal and external legal avenues and go directly to the FBI agent investigating their target reveals exactly what this was: not a victim seeking justice, but a powerful corporation manipulating federal law enforcement to protect itself, and the reputation they felt Curcio now threatened. It was an attempt to silence a whistleblower.

Curcio attempted to contact the company dozens of times about his submissions he had expected back from PSA in a week, having paid for the grading companies fastest 3-day turnaround time service. It had been months, and Curcio filed complaints with the Federal

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 8

KRADEL DEFENSE PLLC
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

Trade Commission, the Better Business Bureau, and others. Curcio eventually retained at attorney who was licensed in both California and Washington to help with the matter. This same attorney assisted in Curcio's civil case against Captain Ticket. In which, Curcio was awarded a judgement against the PSA affiliate. Agent Campbell was aware of all of this, detailing the information in his memos.

None of this was disclosed to the magistrate judge. SA Campbell concealed the ongoing civil dispute, the retaliatory motive, and his own entanglement with the source of the allegations. By presenting PSA as a neutral victim and omitting these material facts, Campbell misled the Court and deprived it of the information necessary to evaluate the credibility of the warrant application—exactly the type of constitutional violation *Franks v. Delaware* exists to prevent.

### 4. PSA Altered and Destroyed Evidence.

Approximately one month after seeking Agent Campbell's advice, PSA took a step that defies explanation. After retaining Curcio's cards for several months, PSA informed Campbell that they would be turning them over. But before doing so, they deliberately removed the cards from their plastic cases, irreparably compromising the physical integrity of the evidence and eliminating any chance for independent verification. Then PSA introduced an entirely new allegation: that one of the now-loose holders "matched" those linked to another individual under investigation, Jason Donnelly. This new claim was made nearly four months after PSA took possession of the cards Anthony sent for reholdering.

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 9

**KRADEL DEFENSE PLLC**
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

> From: Roxanne Ghezzi <rghezzi@collectors.com>
> Sent: Monday, January 30, 2023 4:53:25 PM
> To: Campbell, Christopher J. (NY) (FBI) <cjcampbell@fbi.gov>
> Cc: Zeledon, Rigel <rigel.zeledon@nypd.org>; Amanda Fryer <fryera@collectors.com>; Jackie Curiel <curielj@collectors.com>
> Subject: Re: [EXTERNAL EMAIL] - Counterfeit and Tampered PSA Cards
>
> Hi Chris and Rigel,
>
> Happy New Year! I hope you've both been well. PWCC is reaching out to us regarding the counterfeit PSA graded cards that were sent to them by Anthony Curcio (Tony Jay), Jason Donley and Joe Bondarchuk. They want to know if you'll be reaching out to them soon and if they should return the items to the three individuals. According to them, they will need to send the items back soon to avoid more complaints.
>
> I'll be shipping a few items to you both today. In the package will be two counterfeit PSA holders - one of which was purchased from Jason Donley's eBay account (movies_n_more777 - now changed to cardboardmoose after being publicly called out for counterfeiting), and the other holder was cracked open from one of Anthony Curcio's Reholder submissions. The counterfeit holders are identical to each other. Also in the package will be two real PSA holders, so that you can compare the counterfeits to them. We will also include a tampered label from one of Anthony Curcio's Reholder submissions and a real PSA label from that time-period to illustrate the different font/printing on the label. Curcio's labels have a pixelated font (as described in the brief I sent over to you) which would never occur on an authentic PSA label. Also in the brief, there is an image of this exact same label/cert

This claim served multiple functions: it gave the illusion of forensic credibility, distanced PSA from responsibility for mishandling the card, and shifted the narrative just enough to make their story plausible. But the "identical holders" mentioned as a correlation between Curcio and this other PSA labelled counterfeiter are unverifiable and meaningless. Having the original casing removed from the card after PSA dismantled it or "cracked it open" would make evaluating that very plastic case impossible.

      This was not an isolated event—it was a pattern. PSA's narrative changed to meet the needs of the moment, shifting explanations, timelines, and accusations, and SA Campbell was directly informed, yet allowed them to cover for their own misconduct. He then concealed PSA's changing narrative from the Court. He did not disclose the destruction of evidence, the contradictory dates, or PSA's lack of legal authority to retain, let alone destroy, Curcio's property. He did not disclose how a corporation with a vested financial interest was allowed to manipulate and define the terms and entire direction of a federal fraud case.

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 10

KRADEL DEFENSE PLLC
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

Instead, he adopted a compromised and ever-changing narrative, crafted by a corporate accuser with everything to lose, and passed it off as fact.

### 5. Goldin Auctions: Solicitation, Misrepresentation, and Material Omission

While PSA was researching Anthony and putting together a report to allege he was engaging in selling counterfeit cards, they simultaneously solicited his business at Goldin Auctions and auctioned several of Anthony's cards.

The troubling conduct of Goldin Auctions—along with PSA, both subsidiaries of Collectors Universe, the company that initiated this investigation with Agent Campbell—began long before any allegations of fraud. Goldin actively solicited Curcio, encouraging him to consign high-value cards for sale, in the months preceding their FBI complaint. PSA participated in authenticating the cards prior to auction, maintained physical possession, and allowed Goldin to complete the sales in November 2022—just days before reporting Curcio to the FBI. Even after privately accusing Curcio of fraud, Goldin continued soliciting him for his most valuable remaining cards, raising serious questions about their intentions and further underscoring the bad faith at the heart of their conduct.

The timing is no coincidence. PSA appears to have deliberately waited until the transactions were finalized—ensuring the cards were sold, the proceeds were under their control, and the narrative could be shaped entirely on their terms. Despite the successful sales, Goldin withheld Curcio's payment without explanation, offering only vague responses and ultimately issuing an unexplained partial payment. Curcio was never notified of any reversal, dispute, or allegation of fraud.

PSA portrayed Goldin as a victim to Agent Campbell, specifically asserting that Goldin had refunded $35,000 to a buyer and had not been reimbursed. Yet at the time they made that claim, Goldin's own ledger showed a credit balance owed to Curcio that exceeded

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 11

**KRADEL DEFENSE PLLC**
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

the amount of the alleged loss. More critically, the card at issue was never even shipped to the buyer. PSA itself confirmed to S.A. Campbell that it remained in their own vault. Still, at no point did Goldin inform Curcio of any dispute, reversal, or pending issue, in direct violation of their contractual obligations under the consignment agreement, which required accurate financial reporting, timely settlement, and clear communication regarding any such matters. Instead, they obscured their own records and fabricated a financial "loss" to bolster their claims against Curcio.

Goldin withheld payment. PSA held onto the cards. And Collectors began notifying buyers of supposed fraud—all while portraying themselves as victims. Their actions not only contradict their own certifications but amount to an implicit admission that if fraud occurred, it originated with them, not with Curcio. PSA must have understood this risk, because after retrieving a few of the cards from buyers, they physically removed them from their authenticated holders before turning them over to Agent Campbell—deliberately destroying the only evidence that could be used to evaluate the fraud claims they were making. That destruction ensured no neutral third party could ever verify the truth.

### 6. *PSA Dodged Curcio's Efforts to Confront Their False Allegations, While Secretly Coordinating with Law Enforcement*

By the beginning of 2023, PSA's refusal to engage while holding his valuable property left Curcio with no choice but to escalate his concerns through formal consumer protection channels—filing complaints with the Federal Trade Commission (FTC), the Better Business Bureau (BBB), and the Attorney General. Even then, PSA ignored these formal complaints, refusing to engage or provide any explanation for their actions. This directly contradicts the government's assertion that Curcio was 'put on notice' of the allegations against him.

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 12

KRADEL DEFENSE PLLC
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

The reality is that PSA was not interested in providing notice—they were interested in building a case against him while preventing him from acquiring the evidence needed to fight back.

### C. Tools: Agent Campbell's Affidavit Intentionally or Recklessly Misrepresented Common Items as "Tools" of Counterfeiting,

Agent Campbell's affidavit intentionally or recklessly misrepresented ordinary, readily available household items as specialized tools essential to an alleged sophisticated counterfeiting scheme. In fact, these items likely appeared in the affidavit only because PSA, the biased corporate entity with known retaliatory motives, identified them on Mr. Curcio's public Mercari account as sounding "suspicious" to Agent Campbell.

SA Campbell simply parroted PSA's claim these commonplace tools appeared "suspicious" when possessed by Mr. Curcio. However, SA Campbell knew Mr. Curcio was an author with legitimate professional uses for printers, labels, and office supplies. SA Campbell was also aware through conversations explicitly shared from card buyers, that Mr. Curcio maintained an extensive LEGO city, providing obvious and lawful reasons for possessing engraving tools, and other common household items listed.

The affidavit further misled the magistrate by falsely implying Mr. Curcio's purchase of handheld inkjet printers and thermal barcode labels was indicative of intent to counterfeit PSA labels. This implication is baseless. PSA itself extensively documents the advanced security features embedded in its labels, including proprietary holographic imaging, micro-text printing, and security inks—all incapable of being replicated by standard consumer-grade inkjet or barcode printing equipment.

Agent Campbell possesses substantial experience investigating counterfeit card-related crimes and was therefore fully aware of PSA's complex labelling technology. Despite this

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 13

**KRADEL DEFENSE PLLC**
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

knowledge, he omitted these critical exculpatory facts from the affidavit, deliberately suggesting without basis that ordinary office equipment could produce counterfeit PSA labels.

Agent Campbell also misled the magistrate by including a "lock-cutting kit" among tools allegedly needed to counterfeit PSA card cases. Yet PSA confirmed their card cases are permanently sealed using advanced ultrasonic welding, containing no physical locks or mechanical components susceptible to cutting. Thus, a lock-cutting kit bears no logical or factual relevance to any allegation of PSA holder tampering or counterfeiting.

Agent Campbell asserted in his affidavit that Mr. Curcio's purchase of "various card grading cases" was indicative of intent to counterfeit PSA-certified card holders and labels. However, he deliberately omitted that these grading cases were generic, commercially available products without PSA's proprietary branding or security features. Indeed, authentic PSA cases feature a distinctive raised logo molded directly into the plastic, a feature entirely absent from generic cases. Collectors routinely purchase such generic cases for the legitimate purposes of safely storing, protecting, and displaying their card collections.

Agent Campbell's affidavit recklessly characterized Mr. Curcio's purchase of a magnifier loupe as evidence of criminal intent, despite knowing firsthand that this claim was both factually baseless and inherently deceptive. SA Campbell failed to disclose that Mr. Curcio only purchased the magnifier loupe upon the direct recommendation of Jeff Johnson ("Captain Ticket"), who at the time was actively cooperating with Campbell and the FBI. Johnson explicitly instructed Mr. Curcio that this was an essential tool "every good collector needed," directly contradicting Campbell's subsequent characterization of this same tool as suspicious. Campbell thus not only knowingly misrepresented the significance of the magnifier loupe but deliberately concealed from the magistrate that the tool was affirmatively suggested to Curcio by the FBI's own cooperating witness.

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 14

**KRADEL DEFENSE PLLC**
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

Had the magistrate been properly informed that the allegedly suspicious tool was recommended to Curcio by the FBI's own informant, and further that PSA itself doesn't use such a tool, it would have clearly undermined the affidavit's narrative of criminal intent. Campbell's intentional concealment of these critical, exculpatory fact gravely distorted the probable cause determination

Agent Campbell knew from direct communications with PSA that replicating PSA's proprietary, tamper-resistant card cases required specialized industrial equipment, such as ultrasonic welding machines, <u>not</u> consumer-grade items that he listed. He also knew that none of the "tools" listed would have the capacity to produce fraudulent card cases, nor had ever been alleged to have been used as such by Curcio. Yet, his affidavit misled the court about this material fact. That is reckless disregard for the truth.

### III. CONCLUSION

The defense has met the threshold showing required for the Court to order a hearing under Franks v. Delaware. The affidavit submitted in support of the application for a search warrant for Mr. Curcio's residence included false information, and omitted material information. The magistrate was denied all of the relevant material information needed to determine if probable cause existed to support issuance of the warrant.

*I certify that this memorandum contains 3561 words in compliance with local criminal rules.*

Dated this 24th day of March 2025.

Respectfully submitted,

s/Jeffrey L. Kradel
WSBA No. 26767

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 15

KRADEL DEFENSE PLLC
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

1455 NW Leary Way, Suite 400
Seattle WA 98107
206/397-3102 voice
206/922-5547 facsimile
jeff@kradeldefense.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

AUSA Kingdar Prussein and AUSA David Felton.

U.S. Attorney's Office for Southern District of New York

/s Jeffrey Kradel

REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR HEARING PURSUANT TO
*FRANKS V. DELAWARE* - 16

**KRADEL DEFENSE PLLC**
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>   v.<br><br>ANTHONY CURCIO<br><br>                Defendant. | No. 24-CR-312<br><br>SUPPLEMENTAL DECLARATION IN SUPPORT OF MOTION FOR HEARING PURSUANT TO *FRANKS V. DELAWARE*<br><br>[CLERK'S ACTION REQUIRED] |

**I.    DECLARATION OF COUNSEL**

1. I am counsel for the defendant Anthony Curcio and make this declaration from personal knowledge obtained by review of the discovery provided to the defense by the U.S. Attorney's Office for the Southern District of New York;

2. In paragraph 9 of his sworn affidavit to obtain a federal search warrant for Anthony Curcio's residence, Special Agent (SA) Campbell wrote: "Target Subject-1 attended a card show as recently as April 2024, in New Jersey, where he was identified and removed from the show for having fraudulent cards." At the time Campbell made that claim, he had already authored an internal FBI memorandum documenting the actual outcome of that event. In that memo, Campbell wrote:

SUPPLEMENTAL DECLARATION IN
SUPPORT OF MOTION FOR HEARING
PURSUANT TO *FRANKS V. DELAWARE*
- 1

KRADEL DEFENSE PLLC
1455 NW Leary Way, Suite 400
Seattle, Washington 98107
jeff@kradeldefense.com

> *"Officer Paone stated that Curcio offered to show him the cards, but that he (Paone) was not qualified to determine their authenticity."*

> *"Curcio agreed to leave the show to avoid further issues. No cards were seized."*

The Edison Police Department's official report stated:

> *"Curcio voluntarily left the event. At no point were the cards examined by law enforcement."*

> *"No probable cause was established to initiate an arrest or seizure."*

SA Campbell was aware of the Edison Police Department report and had spoken directly with the Edison Police Oficers prior to submitting the search warrant affidavit. SA Campbell knew that Mr. Curcio was not removed from a card show in New Jersey for having fraudulent cards at the time he submitted the search warrant affidavit.

3. In paragraph 8 of his sworn affidavit to obtain a federal search warrant for Anthony Curcio's residence, Special Agent (SA) Campbell stated that Mr. Curcio had ordered for delivery to his residence "various items needed to create forged card cases and labels." SA Campbell knew when he submitted the affidavit that none of the items described had the capacity to create forged cases and labels given the proprietary nature of PSA's cardholders and labels.

4. The foregoing is true and correct to the best of my knowledge.

_____
Jeffrey L. Kradel