# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

TELEPHONE: +1-212-455-2000
FACSIMILE: +1-212-455-2502

Direct Dial Number

+1-212-455-2542

E-mail Address

martin.bell@stblaw.com

January 7, 2026

BY ECF & EMAIL

Re:  *United States v. Anthony Curcio*, 24 Cr. 312 (RA)

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Dear Judge Abrams:

We represent Anthony Curcio in the above-captioned matter, trial of which will commence on January 12, 2026. We write in advance of the January 8, 2026 final pretrial conference (1) to request that certain evidence of Mr. Curcio's skepticism in the PSA grading process and system at the time of the alleged criminal scheme be admitted; (2) to request that evidence, even outside of Mr. Curcio's state of mind, that would tend to undermine juror confidence in PSA's valuations be admitted; and (3) consistent with Your Honor's order dated January 5, 2026 (Dkt. 72), to respond to the Government's supplemental letter dated January 5, 2026 (Dkt. 71), relating to the parties' pending motions *in limine*, proposed voir dire, and requests to charge. We group these in the same correspondence because, perhaps to a surprising degree, they speak to overarching issues that the Court may wish to address at tomorrow's conference.

## OVERVIEW

As the Court is aware, the Indictment charges Mr. Curcio with a scheme to misrepresent "that low-to-mid grade cards had received high-grade ratings from a reputable card authentication company . . . thereby causing victims to pay more money for the cards than they otherwise would have." Indictment (ECF No. 3) ¶ 1; *see also* ¶ 16 ("[I]n order to induce victims to pay more money for sports and Pokémon trading cards than they otherwise would have paid, [defendants] made and caused to be made false statements regarding the grade assigned to the cards by Company-1.").

One might expect that, as part of its proof, the Government might somehow establish that the cards in question were, in fact, "low-to-mid grade cards" to begin with. We have

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-2-                                          January 7, 2026

learned that this is not the Government's planned approach.  In recent discussions, the Government has indicated it will not seek to establish the actual grade value of the (and, by implication, providing direct proof that the victims paid more money from the cards), but instead focus on whether the cards and holders bore signs of tampering.  From there, the Government will presumably ask the jury to infer that the only reason for that tampering was the scheme they have charged.

We expect that the evidence will show that, at least in a number of individual instances, Mr. Curcio did not understand the cards at issue to be low-grade or mid-grade cards at all. Rather, as a general proposition, and certainly with respect to a number of specific cards, Mr. Curcio understood the grading system of the authenticator at issue—PSA—to be deeply flawed, inconsistent, compromised, and unreliable, well beyond what one might expect of what is, at baseline, an inherently subjective process.  In short, after years of experience as a collector, he came to assign little-to-no value to PSA's claims that a given card warranted a Grade 10 and another card warranted a Grade 8.  The Government's decision not to focus on proving up the actual value of the cards as the "low-to-mid grade cards," as asserted in the Indictment, does not take the issue off the table.  The defense should be able to offer proof with respect to the topic.

Against this backdrop, we make the following two requests.

**A. The Court Should Allow Evidence That Goes to Mr. Curcio's State of Mind Regarding the Unreliability of PSA's Grading Processes**

The defense should be allowed to develop the record regarding Mr. Curcio's state of mind with respect to the unreliability of PSA's grading processes, both generally and with respect to specific cards.  Evidence concerning whether the defendant had the requisite state of mind to commit the offense charged is plainly relevant and probative.  The Government is relying entirely on PSA's grading to establish that Mr. Curcio knowingly schemed to inflate cards' grades *for the purpose of obtaining money beyond their actual value*.  If the evidence shows that Mr. Curcio did not believe PSA's grades to be accurate, with respect to specific cards or generally, it is clearly relevant to whether he had the necessary *mens rea* to commit the offenses charged.

This evidence may consist, in part, of Mr. Curcio's testimony, should he elect to take the stand.  It may also consist, in part, of publicly available information at the time of the alleged scheme, known to the collectible trading community, regarding those factors that would tend to lead to those conclusions about PSA's process or information known to Mr. Curcio about particular cards that would likewise undermine PSA's determinations.  To that end, each party has listed PSA's brand manager on their witness lists, and we expect that her testimony may also be enlightening on this score.

Case 1:24-cr-00312-RA    Document 73    Filed 01/07/26    Page 3 of 8

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-3-                                                                      January 7, 2026

## B. The Court Should Allow Evidence That Would Tend to Undermine the Jury's Confidence in PSA's Grading System

Separately the Court should allow evidence that would tend to undermine the jury's confidence in PSA's grading system. The Indictment charges that Mr. Curcio and his alleged co-conspirators acted in order to induce victims to pay more money for sports and Pokémon trading cards than they otherwise would have paid. If the primary or exclusive mechanism through which the Government will attempt to establish what the victims would have paid relies on PSA's grades, it is not only permissible but essential that the defense be allowed to present evidence that would influence how much trust *they*, as jurors, should put in that grading system. In the absence of an effort by the Government to establish value, the only evidence of the actual value of certain cards that comes into evidence will be unadorned, unexplained, unsubstantiated PSA grades themselves—some of it likely over hearsay objections. They will not be the result of expert opinion. We anticipate that the individual grades likely will not even be explained. It cannot be that PSA is assigned an oracular role in the determination of a critical issue at trial, free from any scrutiny.

As practically applied, this evidence, too, may come in different forms. To the extent that witnesses are aware of inconsistencies, chronic sloppiness, problems with record keeping, and the like, the jury should be allowed to consider them. PSA employees, in particular, should be able to be able to be questioned about these matters. And to the extent that individual incidents demonstration that a PSA decision to take action with respect to a card was driven by impermissible outside forces—including the influence of law enforcement—the jury should be able to consider this as well. As set forth below, certain of Special Agent Campbell's communications with PSA may be admissible under this rationale.

Again, it is the Government's decision to essentially outsource determinations of value to PSA that has brought us here, which underscores the need for these kinds of evidence to be considered by the jury. Because the Government must prove Mr. Curcio's intent to commit the charged scheme beyond a reasonable doubt, and because the charged scheme specifically involves an effort to misrepresent low-grade-worthy cards as having received higher grades, otherwise admissible evidence of Mr. Curcio's belief that the PSA grades were unreliable is plainly relevant and highly probative.

The Court can and should use limiting instructions to clarify the purposes for which these types of evidence are being offered and can be considered, and to limit confusion. The defense would be happy to propose such instructions at the Court's prompting.

The Government's interaction with, and continuing, extensive, and often complete reliance on, third parties, like PSA, are relevant to the questions of whether Mr. Curcio misrepresented the authenticity of his cards or their holders, whether Mr. Curcio intended to defraud his counterparties, and whether the Government can meet its burden of proving the charges against Mr. Curcio.

The Government alleges that Mr. Curcio misrepresented the grades of certain cards, relying solely on PSA's valuation. For example, in investigating and now prosecuting Mr. Curcio, the Government relies exclusively on PSA's determination of whether the cards and

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-4-                                                                                    January 7, 2026

their holders are authentic.  At trial, Mr. Curcio intends to show the jury just that—that the Government was and is continuing to rely solely on PSA's authenticity determinations.  And, with that foundational understanding, Mr. Curcio then intends to show that those determinations are open to reasonable doubt because, *e.g.*:

- with respect to Mr. Curcio, PSA deviated from its ordinary processes at the behest and to the benefit of the FBI;

- PSA's grading is inherently subjective and, as a result, inconsistent, so determinations as to the authenticity of a given holder based on the grade given are unreliable; and

- PSA's determinations as to some of Mr. Curcio's cards were based not on physical inspection of the cards, but things like archival pictures instead, which PSA admits can lead to inaccurate determinations, *compare, e.g.*, Ex. 1 ███████████████████████████████████████████████████████████████, *with* Ex. 2 ███████████████████████████████████████████████████████████████████████.

Mr. Curcio must be permitted to show the jury that the Government has and continues to construct its case against him on unquestioned determinations from PSA, which, he will show, are open to serious doubt.

During its investigation, the Government relied on PSA to collect evidence from Mr. Curcio.  Mr. Curcio, for example, sent encased cards to PSA for reholdering—*i.e.*, to have the cards and their holders reauthenticated, have the cards taken out of their old holders, and have the cards put into new holders.  Instead of sending reholdered cards back to Mr. Curcio, PSA sent his cards to the Government, and the Government now intends to introduce some of the same cards as evidence at trial.  Mr. Curcio intends to show that that prospective evidence should not be credited because at least some of it was tampered with by PSA before it was sent to the Government.  The card and holder below, for example, was originally sent to PSA intact.  PSA then partially destroyed the holder before sending it to the Government.

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-5-                                                January 7, 2026



USAO_000014898; *see* USAO_000014844 █████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████. SA Campbell, as the liaison with PSA and recipient of that evidence, has first-hand knowledge of this evidence's chain of custody and condition, including after it was tampered with by PSA.

Relatedly, the Government's continued entanglement with PSA also tainted PSA's own internal processes as applied to Mr. Curcio. In one instance, for example, the Government directed PSA to deactivate the certification numbers of several cards, acknowledging "we have some of these cards in our custody." And PSA readily agreed to do so without physically inspecting the cards in the Government's custody. *See* Ex. 3. That is the opposite of what the grading business is based on: having individuals send in cards for physical inspection and an impartial, structured assessment.

Mr. Curcio intends to show at trial that, misguided or not, his actions were driven by a desire to expose PSA as a monopoly whose promise to authenticate and objectively evaluate the physical condition of collectible cards was a sham. PSA employees shared, for example, reservations about the accuracy of their determinations. *See, e.g.*, Ex. 1.

Mr. Curcio does not intend to argue, as the Government suggests, that its failure to use a particular investigative technique shows that he is innocent. Further, as noted earlier, a modest limiting instruction will prevent this becoming a trial-within-a-trial about PSA by focusing the jury on the specific purposes for which this evidence has been admitted.

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-6-                                                                          January 7, 2026

In sum, the Government cannot distance itself from PSA now, for purposes of trial, because it bears directly on the reliability of the evidence and merit of the charges against Mr. Curcio, including as to the questions of whether there was any misrepresentation and whether there was any intent to defraud. Moreover, as a matter of both evidentiary soundness and basic fairness, the Government should not be allowed to simultaneously rely on PSA to assess the grading value of evidence that will be presented at trial and testify at trial that Mr. Curcio misrepresented his cards or their holders while shielding PSA's role, its methods, and the Government's communications with its employees from scrutiny. PSA's evidence collection, determinations, validation criteria, and interactions with investigators go to the heart of the alleged fraud, and Mr. Curcio should be permitted to tell that story, including through full questioning of PSA employees and Special Agent Campbell where appropriate.

We turn now to the remaining issues in the Government's letter.

## C. The Alleged Co-Conspirators' Statements Should Not Be Admitted

The Court should not blanketly admit alleged co-conspirator statements into evidence before trial.

As a preliminary matter, the Government's invocation of Rule 801(d)(2)(E) is based on impermissible bootstrapping. To be sure, Rule 801(d)(2) requires that he contents of a coconspirator's statement "must be considered." But, the statements do "not [themselves] establish. . .the existence of the conspiracy or participation in it." *Id.* Besides soothsaying what it believes will happen at trial, the Government does not offer any independent evidence corroborating the statements it puts forth to be admitted, which is fatal to its motion.

But even if the Court were to look past that flaw, a four-factor tests governs admission of a co-conspirator statement. Rule 801(d)(2)(E). Such statements are not hearsay if:

(1) The statement is made during the course of a conspiracy;
(2) The statement is made in furtherance of the conspiracy;
(3) The existence of the conspiracy has been established; and
(4) The membership in the conspiracy of the party and the declarant has been established.

Additionally, it is black letter law that "mere association" or "even presence at the scene of their crime will not ordinarily" establish that someone is a co-conspirator. *United States v. Cirillo*, 499 F.2d 872, 883 (2d Cir. 1974).[1] Nor will out-of-context snapshots of

---

[1] The Government's own proposed Requests to Charge explain that "mere association with one or more members of the conspiracy does not automatically make the defendant a member. A person may know, or be friendly with, a criminal, without being a criminal himself. Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish membership in the conspiracy." Gov't's Req. to Charge (ECF No. 62) at 28.

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-7-                                                                January 7, 2026

insincere jokes between Mr. Curcio and, for example, CC-1: A discussion about ██████
██████████ is the kind of "casual conversation" that is "difficult to envision" furthering a conspiracy. *United States v. Lieberman*, 637 F.2d 95, 102 (2d Cir. 1980). ███████
█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
█████████████████████████

Nor is the submission of similarly disjointed texts with CC-2 sufficient since the Government did not tie together how, if at all, CC-2 fit within the alleged conspiracy. The Court must find independent evidence of agreement and knowing participation. Mr. Curcio respectfully submits that the Government must meet the evidentiary standards under 801(d), and it simply failed to do so through its motion.

## D. Mr. Curcio Does Not Object to the Government's Additional Proposed Request to Charge and Has a Limited Objection to the Government's Additional Proposed Voir Dire Question

Mr. Curcio does not object to the Government's additional proposed request to charge.

As for the Government's additional proposed voir dire question, Mr. Curcio does not object except to the extent that it implies that the Government will have lay witnesses provide expert opinion testimony. *See* Gov't's Jan. 5, 2026 Ltr. (Dkt. 71) at 2 ("The question regarding jurors' eyesight is relevant because, in connection with testimony regarding visual, physical distinctions between authentic PSA card cases and labels and counterfeit PSA card cases and labels, the Government expects to introduce authentic and counterfeit items themselves as physical evidence that the jurors will be able to review and evaluate *in the context of that testimony*." (emphasis added)). As explained in Mr. Curcio's Motion *in Limine* and Opposition to the Government's Motion *in Limine*, testimony about whether a card or its holder are authentic is expert opinion testimony because it draws on specialized knowledge to assist the jury in reaching a reasoned conclusion. *See* Def.'s MIL (Dkt. 60) at 12–16; Def.'s Opp'n to Gov't's MIL (Dkt. 66) at 2–4. █████████████████████
███████████████████████████████████

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-8-

January 7, 2026



Ex. 4 (highlighting added).  The Government did not disclose or qualify any experts by the May 1, 2025 deadline, and it should not be permitted to elicit such testimony at trial under the guise of lay witness testimony.

\*                    \*                    \*

As always, we thank the Court.

Respectfully submitted,

/s/

Martin S. Bell
Meredith Karp
Patrick K. Barry
Nicolas Lussier
Wendy Shidi Wu
Gineen K. Abuali