# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

TELEPHONE: +1-212-455-2000
FACSIMILE: +1-212-455-2502

---

Direct Dial Number
+1-212-455-2542

E-mail Address
martin.bell@stblaw.com

January 12, 2026

BY ECF & EMAIL

       Re: *United States v. Anthony Curcio*, 24 Cr. 312 (RA)

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Dear Judge Abrams:

  We represent Anthony Curcio in the above-captioned matter, trial of which will commence later today. We write, in accordance with the Court's Individual Rules, to flag an issue that the Court may wish to take up at some point before testimony. The Government intends to introduce a recording that is replete with hearsay – in some cases, hearsay within hearsay – as well as undisclosed and otherwise impermissible expert testimony. The issues are of sufficient moment that a mere limiting instruction is not sufficient to correct them. The Government should submit a proper redacted version of the recording, or none at all.

  Last evening, we informed the Government of our intention to object to the admission of GX 1200 and GX 1200-T in their current form. We understand the Court to have copies of the exhibits, but by way of summary, GX 1200 is a May 1, 2023 conversation surreptitiously recorded by Joe Baudo, a purported victim of the scheme alleged in the Indictment. The call is nearly a half-hour long. In the conversation, Baudo confronts a person whom he calls "Joe" ("Individual-1") who sold him three cards. We believe that the Government's position is that Individual-1 is Mr. Curcio.

  Baudo explains that he showed the cards to a learned third-party at a card show, and that that person believes the card holders to have been faked, and further believes there to be several other problems with the cards. For example, Baudo tells Individual-1 the following:

> Yeah, he showed me via loop, like he looked at a loop in the side of the cases. He's like, this, this case was popped open.

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-2- January 12, 2026

> He said it on all three. He said the Joe Montana card. He said the PSA case is fake, and that the Montana has so many different flaws with it that it, it would've never received a 10. And he said the case is altered and doesn't match. I guess the, um, the, the barcodes, the way he said the barcode will read if you scan it, but it's not legitimate.
>
> And I just got home literally like when I, when I sent you an email, I was with him and he said that he is a hundred percent confident that, well, he said 99 percent, that the, the cases are either fake PSA slabs. Um, and/or the Jordan was, he said the Jordan was trimmed, and he showed me via loop where you could see like the, the top part of it. And he said he thinks it was slid into the PSA case and resealed. I'm just telling you what he told me.
>
> Yeah. Yeah. The Montana, he said, this gentleman said that the PSA slab was fake.

GX 1200-T at 1-3, 10.

Baudo and Individual-1 talk about what to do about this, and Individual-1 broaches the possibility of either "reversing" the transaction or reholdering the cards. Individual-1, apologetic, makes several statements that could be interpreted as either party admissions or statements against interest. At one point late in the call, with Individual-1's permission, Baudo actually patches the third party, Damon Kruszewski, into the call. Kruszewski spends a substantial portion of the next few minutes explaining why he believes the card holders and labels to have been illicitly modified. The explanation includes references to online database that are not be marked as exhibits and that the Government has not signaled will somehow get into evidence. It is an account that appears to rely heavily on knowledge that an ordinary layperson would not have, although the origins of that knowledge, like most things about Damon, are unexplained. For example:

> Okay. So basically I got on Vintage Card Prices, um, and they have a history going all the way back to 2007 of pretty much all sales with pictures. So, I sent you both pictures. I could not find a previous, uh, sale history of the Jordan, but I sent you pictures both front and back of the Montana and the Jeter, the original cards that were in those holders. So, what it looks like is that the holders were either, they're, they, they might have used the same label for the Montana, but the card has definitely been switched out. Um, you could tell by both the centering on the back and on the front. Um, it's also, uh, does not have the PD, the yellow PDs near like the bottom of his uniform pants. Um, and—

*Id.* at 25-26.

Individual-1 doesn't say much after that, other than ask a question. Shortly thereafter, the call terminates abruptly. There is no evident reason for the conversation's sudden end.

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-3-                                                                                  January 12, 2026

We informed the Government that we intended to object to the hearsay, and in some cases *layers* of hearsay, within this recording. (From a hearsay standpoint, it is never a good sign when the Government's proposed recorded exhibit contains the phrase, "I'm just telling you what he told me.") We have announced our intention to object to the improper expert testimony contained therein as well. As a courtesy, we told the Government that while we conceded the admissibility of Individual-1's statements for purposes of argument, we believed it might be prudent for them to prepare an alternate, redacted version containing only Individual-1's statements in the event of an adverse ruling.

Later that evening, the Government confirmed its intention to offer GX 1200 and GX 1200-T through Mr. Baudo. The Government further shared that its position would be that no redactions are necessary because those statements are not being offered for their truth and a limiting instruction would be sufficient. At the time of this writing, no proposed language for a limiting instruction has been shared.

\*   \*   \*

Although there is a general presumption that juries will actually follow limiting and curative instructions, courts have acknowledged that, sometimes, a limiting instruction simply is not enough. Courts have found that they are insufficient to prevent error where the hearsay matter addresses a highly material issue. *See United States* v. *Tussa*, 816 F.2d 58, 66-67 (2d Cir. 1987). Courts have likewise found that limiting instructions are an insufficient safeguard when the hearsay matter is deeply prejudicial. *See United States* v. *Martin*, 897 F.2d 1368 (6th Cir. 1990). Courts must consider first, "whether the non-hearsay purpose by which the evidence is sought to be justified is relevant, *i.e.,* whether it supports or diminishes the likelihood of any fact 'that is of consequence to the determination of the action," and secondly, "whether the probative value of this evidence for its non-hearsay purpose is outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement." *United States* v. *Reyes*, 18 F.3d 65, 70 (1994). In considering the latter, the Court must ask, "Does the declaration address an important disputed issue in the trial? Is the same information shown by other uncontested evidence? Was the statement made by a knowledgeable declarant so that it is likely to be credited by the jury? Will the declarant testify at trial, thus rendering him available for cross-examination? If so, will he testify to the same effect as the out-of-court statement? Is the out-of-court statement admissible in any event as a prior consistent, or inconsistent, statement? Can curative or limiting instructions effectively protect against misuse or prejudice?" *Id*. at 70-71. In *Reyes*, the Court found that the testimony of custom's agent regarding statements by two persons implicating the defendant in drug trafficking conspiracy resulted in prejudice that exceeded probative value of non-hearsay uses of evidence. "Given the high potency of these declarations, their determinative significance for the only important issue in the trial, and their lack of significance for any other purpose, the limiting instructions given by the court were unlikely to prevent the jury from considering the declarations for their truth." *Id*. at 72.

It is difficult to imagine an instance in which the potency of the message, its potential determinative significance, and its lack of significance for any other purpose more clearly

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams

-4-                    January 12, 2026

combine to inspire a similar conclusion. The jury is being asked to consume a half hour long tape (both by listening to it and reading the provided transcript), in which from the very beginning of the tape, minutes at a time are unsworn "testimony" of the nature described above. The issues go directly to the heart of the case – the hearsay declarations are themselves conclusory allegations that Mr. Curcio tampered with holders and labels for cards at the heart of the case, an issue that Mr. Curcio intends to contest vigorously. They are not significant for any other meaningful purpose; the only purpose for which they are even arguably relevant is as context for the statements of Individual-1, who himself is merely proposing ways to settle the situation and denies knowingly selling an altered card. It would be foolhardy and naïve to expect even a well instructed jury to consider these hearsay statements for their truth. "But it would be quixotic to expect the jurors to perform such mental acrobatics called for by the district judge." *United States* v. *Jones*, 16 F.3d 487, 493 (2d Cir. 1994) (reversing where the district court improperly used a limiting instruction to correct prejudice caused when defendant's criminal history was inappropriately communicated to jurors at trial). "The presumption that a jury will adhere to a limiting instruction evaporates where there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense." *United States v. Daniels*, 770 F.2d 1111, 1118 (D.C. Cir. 1985).

There's more that the Court could consider. The declarant will not testify at trial; "Damon Kruszewski" is not on anyone's witness list.[1] He will therefore not be available for cross-examination. His testimony, laundered through Baudo's statements and the recording, could not be tested in the only way available. Further, a Sixth Amendment issue would arise, because Curcio would not be able to confront Damon Kruszewski, a witness against him.

But there's even more. Kruszewski *could not* testify at trial, because he would be an undisclosed expert witness. The substance of his account is clearly expert testimony under Rules 701 and 702. Neither he nor anyone else was ever designated as an expert in this case, and the issue of whether he could testify as an expert was never properly litigated. The source of his expertise remains utterly unknown; he's introduced as just some guy at a trade show. But he is treated as an oracle and put forth as credible in the conversation.

The point is made. The proposed treatment of GX 1200 and 1200-T is insufficient in almost too many ways to count. The Government's attempt to get the recording admitted in its entirety is puzzling in the most favorable light and wildly irresponsible at worst. There is no way one could expect a jury to ignore the substance of Kruszewski's statements and not consider them for their truth even with a limiting instruction, and the result is a parade of evidentiary problems stemming from the fact that he has not been and could not be vetted as an expert (and Curcio has been denied the opportunity to get a rebuttal opinion) and the fact that Kruszewski could not be cross-examined. The Court should order that, if Individual-1's

---

[1] The Government did not even include Mr. Kruszewski on their list of names for the *voir dire* process. Should the Court somehow not order this testimony redacted, the Court should add his name.

Simpson Thacher & Bartlett LLP

The Honorable Ronnie Abrams -5- January 12, 2026

statements are to be admitted, the hearsay and hearsay-upon-hearsay from Mr. Kruszewski must be redacted in its entirety, or else the recording does not come in at all.

    We thank the Court.

                                    Respectfully submitted,

                                    */s/ Martin Bell*
                                    Martin Bell
                                    Meredith Karp
                                    Patrick Barry
                                    Nicolas Lussier
                                    Wendy Wu
                                    Gineen Abuali