P6N3GLO1

STATES UNITED DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x

UNITED STATES OF AMERICA,

         v.                         24 Cr. 370 (VSB)

SAM GLOVER,

                                   Trial
         Defendant.

-------------------------------x

                                New York, N.Y.
                                June 23, 2025
                                9:30 a.m.

Before:

                HON. VERNON S. BRODERICK,

                                District Judge
                                - and a Jury -
                    APPEARANCES

JAY CLAYTON
     United States Attorney for the
     Southern District of New York
BY:  SARAH MORTAZAVI
     COURTNEY HEAVEY
     MARGUERITE B. COLSON
Assistant United States Attorneys


MUKASEY YOUNG LLP
     Attorneys for Defendant
BY:  MARC L. MUKASEY
     TORREY K. YOUNG
     MICHAEL WESTFAL

P6N3GLO1

(Trial resumed; jury not present)

THE COURT:  Counsel, if counsel can please identify themselves for the record.

MS. MORTAZAVI:  Good morning, your Honor.  For the government, Sarah Mortazavi, Marguerite Colson, Courtney Heavey, and we have paralegal specialists Octavia Drew and Nerlande Pierre.

MR. MUKASEY:  Marc Mukasey, Torrey Young, Brie Alford, Mike Westfal with the defendant, Sam Glover.

THE COURT:  Good morning.  I thought it made sense, but I will do it in whatever order you want, but I thought we might want to speak with the juror first and figure out exactly what the issues are.  The juror mentioned to my deputy clerk she would prefer to do it at sidebar.  My sense, I don't know exactly what the issue is.  I don't know the exact timing of her appointments.  But the end result may that be she's actually scheduling a surgery.  So, does it make sense to speak with her now and do it at sidebar and figure that out, and then I'll have her go back and then we can discuss the issue more fully outside of her presence.

MS. COLSON:  Sure, your Honor.

THE COURT:  From the defense?

MR. MUKASEY:  That's fine, Judge.

THE COURT:  Okay.

(At the sidebar with Juror No. 7)

P6N3GLO1

THE COURT:  So Ms. Dasilva, we received your e-mail. Thank you for letting us know.  I just wanted to -- and without telling us specifically what procedures you're going to have, do you have appointments scheduled this week or next week?

JUROR NO. 7:  No, I don't.  Because I don't have the time, every time I leave this place, it's already 5:30.  So I tried Saturday and they told me that the office is open from 8:30 in the morning until 5:30 p.m.

THE COURT:  Okay.

A JUROR:  I asked if they can call me between 8:30 or 9:30 or from 12:45 to 1:45.  Otherwise I will call them this afternoon.

THE COURT:  Without discussing, are you trying to, is it a surgery you're trying to arrange or something?

JUROR NO. 7:  I don't know.  It's referral from my GYN doctor to an oncologist.

THE COURT:  All right.  So far you haven't scheduled but you're trying to schedule something.

JUROR NO. 7:  I don't know if it will be sometime this week or the following week.  I don't know.

THE COURT:  Okay.  And let me ask, and this is aside from the scheduling, is it something that's preoccupying your mind right now?

JUROR NO. 7:  Yes.

THE COURT:  Okay.  If I could ask if you could

P6N3GLO1

actually sit in the jury box and I just want to speak with the lawyers.

JUROR NO. 7:  Sure.

(Juror not present)

THE COURT:  So, I mean it sounds like her physician wants her to see a doctor about potential cancer.  So, let me hear from the parties.  I don't want to impede her scheduling appointments to figure out exactly what's going on.  And I certainly don't want, if it turns out that she requires further procedures, I wouldn't want to delay that.  Having said that, she doesn't have anything scheduled yet.  But she has indicated that, understandably, it's something that's preoccupying her or it's on her mind.  So, let me hear, I'll hear first from Mr. Mukasey and Ms. Young.

MS. YOUNG:  Your Honor, given she reached out over the weekend and has expressed concern about her ability to seek treatment as well as the fact that it is preoccupying her mind, I'm concerned that she wouldn't be able to give her full attention that is required as a juror for service.

THE COURT:  Yes.  From the government?

MS. COLSON:  We agree.  No objection.

THE COURT:  All right.  So I'm going to excuse her so that she can take care of her appointments and hopefully it's nothing.  But, so I'll excuse her now.  And then we can deal with the other issues that were raised over the weekend.  Thank

P6N3GLO1

you.

(In open court)

THE COURT:  Okay.  Ms. Dasilva, I'm going to excuse you from having to sit for the remainder of the trial. Mr. Quintero is just calling the jury folks across the street just to make sure what we should do, whether we can release you from here or whether you need to go across the street or something.

JUROR NO. 7:  Thank you.

(Pause)

THE COURT:  Okay.  There is no need, Ms. Dasilva, for you to go across the street.  You can just gather your belongings and you can head home or whatever.

JUROR NO. 7:  What about the --

THE COURT:  Give the badge to my deputy clerk.

THE DEPUTY CLERK:  She does not need to report across the street.

THE COURT:  That's right.

JUROR NO. 7:  Thank you.

THE COURT:  And we all wish you luck.  And thank you for your service.

(Juror not present)

THE COURT:  So that will mean everyone, and by everyone I mean the jurors, will shift down and so Juror 13 will become 12 and Juror 14 will become 13.  So Ms. Hoffer is

P6N3GLO1

the alternate.

Have the parties discussed I guess a couple of issues. One is Defense Exhibit 284, and the other is the Rhonda Beck, the testimony of Rhonda Beck Johnson, and the developments last night. Have the parties discussed it or are we in the same place?

MS. MORTAZAVI: No new developments, your Honor.

THE COURT: So why don't we first -- let me ask, Mr. Mukasey, I'll do, in either order, whatever you're prepared to discuss. I'll leave it up to you. It doesn't matter to me.

MR. MUKASEY: I just want to address the 11 p.m. disclosure of the non-pros first, if that's okay.

THE COURT: Yes.

MR. MUKASEY: The issue regarding 284 is an evidentiary issue we can all hash out under rules and work through. This is something different.

When you are on this side of the table, in the era of big data and terabytes of discovery, and you are representing a man who is facing half a decade in prison, with two daughters, who's never had anything more in his criminal history than a duck hunting ticket, in a case about horse medication, you feel a tremendous amount of pressure and responsibility. And the only way to deal with that pressure is to prepare, and prepare more, and prepare more than that, and overprepare.

There are no shrinking violets on this side of the

P6N3GLO1

table.  We know this is a full contact sport.  We know we have to be ready for 3500 material during lunchtime and discovery at 9 a.m.  But there is a limit to what we can absorb.  And preparing the cross-examination of somebody who was at one point seemingly a whistleblower, and is now a cooperating witness essentially or an immunized witness, is not something that at midnight we start to kind of throw down a few Post-its about.  It is something that requires tremendous preparation.  It is a completely different approach to the witness.

We'll handle it.  But a non-pros dated June 15 on its front page and I guess finally executed yesterday of which we had no notice, despite the fact that we have been sort of peppering Ms. Mortazavi with questions, because she has teased out this idea of a non-pros for months.  First we thought it was Baker.  Then we, you know, just asked and we never got We're about to sign someone up, we're thinking about Rhonda Beck Johnson being signed up.  We never got anything.

There is a limit to what we can absorb and what we should have to do off the cuff in the courtroom.  We can do it and be Constitutionally effective and we will.  But I think it's wrong.

THE COURT:  Let me hear from the government.

MS. MORTAZAVI:  Certainly, your Honor, the government hasn't tried to hide the ball here.  As Mr. Mukasey pointed out, we have alerted him to the fact that we may be extending a

P6N3GLO1

non-pros to a pharmacist.

MR. MUKASEY:  No, that's not right.  That's just not right.

THE COURT:  Mr. Mukasey.

MR. MUKASEY:  I thought it was Baker for a long time, and we asked her and we were never told the identity of the person or the occupation of the person.

THE COURT:  Let me ask, was it disclosed the occupation of the witness that was getting the non-pros?

MS. MORTAZAVI:  It was disclosed we were going to be calling at trial two cooperators and two additional whistleblower witnesses.  And that there may or may not be non-prosecution or there would likely be some type of coverage for those witnesses who are not cooperators.

So I take issue with the characterization that this is essentially a cooperation agreement.  We have been clear that we were going to extend a non-prosecution agreement.

As to Mr. Mukasey's assumption it was to Dr. Baker, he has never appeared on our witness list.  We've never produced 3500 for him.  I don't know why he would reach the conclusion that that was the witness to whom we were extending a non-prosecution agreement, because there was no indication that we had spoken with him.  there were indications we had spoken with whistleblowers.  Indeed they were characterized as whistleblowers in the 3500 material.

THE COURT:  Let me ask.  In terms of the disclosure, was it made clear that the person to whom a non-pros or some sort of immunity, or why don't we just say a none non-pros, was going to be given was one of the two whistleblowers, quote unquote, whistleblowers?

MS. MORTAZAVI:  Yes, there was some discussion of, always a discussion --

THE COURT:  Now, this is a precise question.

MS. MORTAZAVI:  I want to be precise in my answer, your Honor.  We were asked to preview before the 3500 deadline who we expected to call at trial.  We identified two cooperators, and two additional potential witnesses who were whistleblowers.  We had previously produced 3500 early of certain witness statements.  It did not include Dr. Baker.  We have not at any point identified that he would be a witness at this trial.  We discussed that there would be some type of coverage for these whistleblower witnesses.  Did not commit to whether it was immunity or non-prosecution.

The discussions over a non-prosecution agreement continued, and I've said in court that there would likely be a non-prosecution agreement extended.  However, we had not extended it, and it was true.  As to the date of the actual non-prosecution agreement, it was drafted June 15, but not signed by our side on June 15.  Nor was it fully executed on June 15.  It was fully executed yesterday.

P6N3GLO1

Now, this particular witness, Ms. Beck, is represented by counsel. She wanted time to discuss the agreement with her attorney. We gave her that time. And at the time she fully executed the agreement, we produced it as 3500 that day.

THE COURT: When were you planning on calling Ms. Beck Johnson?

MS. MORTAZAVI: Today, your Honor. She will not be the first witness. We are going to be calling prior to her Dr. Franklin.

THE COURT: Okay. How about this. Look, my understanding is you have Mr. Kirtley, Dr. Franklin, was Elizabeth Christie next or no?

MS. MORTAZAVI: We were planning to call Ms. Beck before Ms. Christie.

THE COURT: What I'm thinking about is that Ms. Christie and Mr. Hopkins will go, and that Ms. Beck Johnson will be after that. I think those witnesses will take us through the day. It will give Mr. Mukasey and the defense time additional time to figure out or to plot out the cross-examination with the additional information of the non-pros. Understanding that there is a bunch of other 3500 material that they've had for a while, but I understand what Mr. Mukasey is saying in terms of how you might approach a witness with a non-pros differently than you would approach a witness who I guess heretofore had been considered a

P6N3GLO1

whistleblower and what tack you want to take with regard to that.

So, let me hear you on that, that's my thought.  So it would mean that Ms. Beck Johnson, to the extent she was planning on leaving, she would be here until at least tomorrow. Because I don't know how long Mr. Hopkins will take.

MS. MORTAZAVI:  Understood.  And if that's your Honor's ruling, we're happy to move around the witness order accordingly.

THE COURT:  That is my ruling.

MS. MORTAZAVI:  Okay.

THE COURT:  And so, I think, let me just to be clear, if we end up getting through Mr. Hopkins today, which -- let me ask, who is doing the examination of Mr. Hopkins?

MR. MUKASEY:  I am.  Oh sorry.

THE COURT:  Let me hear from the government and I'll hear from Mr. Mukasey.

MS. HEAVEY:  I am, your Honor. And you are asking about the length of time?

THE COURT:  About.

MS. HEAVEY:  I think it's a couple of hours.

THE COURT:  So two to three, two to four, something like that.  And so, if we conclude him, we're just going to end, we'll end early for the day if that's the case.  And Mr. Mukasey, I know you haven't heard what he's going to say

P6N3GLO1

but I assume you'll have at least an hour or so of cross depending upon what happens.  So, I think we're going to eat into most of the day.

Look, I think this is the appropriate solution to give the defense additional time with regard to this and figure out, you know, how to approach it.  Okay.  So, with regard -- anything else with regard to Ms. Beck Johnson?  Okay.

So, Defense Exhibit 284.  The government has raised an issue with regard to the additional section which is an e-mail from Mr. Glover to Mr. Hopkins relating to that e-mail string that had been Government Exhibit 158, but the defense has added or unredacted I guess Mr. Glover's e-mail.  So the government asserts it is hearsay, so let me hear from the defense concerning the basis for its admission.

MR. MUKASEY:  Two bases, your Honor.  Number 1, it goes to Mr. Glover's state of mind.  Number 2, under Rule 106 it is necessary to give complete context to the remainder of the e-mail.  And under 106, the hearsay issue is out the window.  It is necessary for clarity and for completion of the message below it.

THE COURT:  Okay.  Let me hear from the government.

MS. MORTAZAVI:  Well, your Honor, Rule 106 is inapplicable because it doesn't apply to e-mail threads in the way that Mr. Mukasey is suggesting.  If we had wanted to include a portion of a sentence and then redact the remainder

of that sentence, then I agree that Rule 106 may apply. But that's not what we were doing here. We're focusing on a lower in chain e-mail thread. You can understand that lower in chain e-mail thread as a recipient did without seeing the response to it. It's not the case that we always have to include the most complete version of an e-mail thread under Rule 106 for it to be admissible.

THE COURT: Let me ask, just in terms of, because I don't know or I didn't, I couldn't find a copy of the defense exhibit. But just so I know, the Mr. Glover's e-mail to Mr. Hopkins sort of the --

MR. MUKASEY: May I approach?

THE COURT: Yes, you may.

The last portion so, as I understand what transpired is there is the e-mail chain that goes back and forth, and then Mr. Glover forwards the whole chain to Mr. Hopkins. But, so, let me hear the government on the other point that Mr. Mukasey made which is Mr. Glover's state of mind.

MS. MORTAZAVI: Well, this doesn't -- the hearsay rule permits statements on someone's state of mind if they are forward looking, not backward looking, and that remains the case.

Now there are a lot of statements in here, as we point out in our letter, that speak to historical practices. Eddie being the PIC, pharmacist in charge. This was not the case

P6N3GLO1

when Becca was in charge which was quite a bit before this e-mail was sent because she was no longer involved in U.S. Compounding as a full-time employee in 2020. So, state of mind is simply not applicable to these statements that are backwards looking, not forwards looking.

THE COURT: Okay. Mr. Mukasey.

MR. MUKASEY: I think if you read the large Rhonda Johnson e-mail you will see that he is reacting in his present state of mind, then present state of mind, not about a backwards state of mind.

With regard to 106, Ms. Mortazavi's appreciation of the rule is flawed. there is no exception for e-mail chains. If I write an e-mail to somebody that says I'm going to murder you, and the --

THE COURT: I hope you would never write such an e-mail.

MR. MUKASEY: Not to you I wouldn't.

THE COURT: Yeah.

MR. MUKASEY: And the next link in the chain is "when we play golf tomorrow." That is necessary to complete the context. So, the fact that it's an e-mail and it's not half a sentence that needs to be completed is irrelevant.

THE COURT: I think the problem, though, Mr. Mukasey, is that this comes at the end of the e-mail chain, and it is a forward, not an e-mail to the sort of group. So, with regard

to 106, I don't view it, so if it was in the middle of the chain, and the government redacted that and it was basically commentary about that, I might have a different view.

With regard to the statement that it's with regard to Mr. Glover's state of mind, my understanding is that under 803(6) it is forward looking, and it is also being offered for the truth.  Right.  It's for his state of mind at the time. He's the defendant and not a witness in some way.

So I'm not going to permit it to be admitted on the basis of what I've heard so far.

Having said that, and you can't just read it to the jury.  But, if there is some context, in other words, it went to Mr. Hopkins, Mr. Hopkins is going to be a witness, if you think that he did or did not take some action based upon seeing this, then you can ask him to read it and say what did you do after that, or something like that.  I have no idea.  But in terms of it coming in, I'm ruling that it's not going to come in as a standalone exhibit.

MR. MUKASEY:  Just for purposes of clarity of the record.

THE COURT:  Go ahead.

MR. MUKASEY:  It's not just you that I will not murder.  I will not murder anyone.

THE COURT:  It's always good to be clear about things like that.  And now that would be a rule of completeness,

P6N3GLO1

because if you just had that one part and people got the record, but okay. So I made the ruling.

MR. WESTFAL: Can I just clarify just make one point. The issue of forward looking/backward looking, self-serving nature of a defendant's statements. When we looked at the case law cited in the government's letter, in particular *United States v. Harwood, United States v. DiMaria*, we think the issue that the court is talking about there in terms of forward looking/backward looking, part of it is timing and contemporaneousness of what the defendant is speaking about. In those cases, they were dealing with post-arrest statements by a defendant talking about conduct that had occurred five and six months ago. So there is an issue there in terms of clearly he's being interviewed by law enforcement, he's looking back at conduct, and the self-serving nature is apparent on its face.

Mr. Glover here is speaking about an e-mail that he had received from Rhonda Johnson five hours ago. And just reading the tense of the verbs, Mr. Hopkins I want to keep you in the loop on this. There is a lot of this that I'm hearing for the first time.

So, it's not a post-arrest statement looking back at conduct that occurred six month ago, but an e-mail five hours ago, and he's speaking of his present state of mind at that point in time.

And then anything sort of beyond that in terms of the,

P6N3GLO1

quote unquote, self-serving nature goes to weight and not admissibility. For those reasons, we offer this exhibit into evidence.

THE COURT: Okay. Thank you for that clarification. Even with that, I would still rule that the exhibit is not coming in as a standalone exhibit. And we'll see where the testimony goes.

MR. WESTFAL: Thank you.

THE COURT: Thank you very much. All right. Are there any other issues that we should take up?

MS. MORTAZAVI: Not from the government.

THE COURT: From the defense?

MR. MUKASEY: No, Judge.

THE COURT: All right. So, my understanding of the order of the witnesses, why don't we take a brief -- the people need a brief break. So why don't we come back at 10:20, 10:25 and then we'll bring the jury out and we'll hear the conclusion of Mr. Kirtley's cross and then any redirect. Okay. Thank you very much.

(Recess)

THE COURT: Do we need to address anything before we bring the witness and the jury out?

MR. MUKASEY: Judge, are you going to address with the other jurors the loss of No. 7?

THE COURT: I'll basically say that Ms. Dasilva has