

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 14, 2026

**BY ECF**

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

     **Re:**    ***United States v. Anthony Curcio*, 24 Cr. 312 (RA)**

Dear Judge Abrams:

     The Government respectfully submits this letter following today's discussion regarding whether testimony during the direct examination of a Government witness moots the defendant's motion *in limine* regarding evidence of the defendant's purported alternative motive for the fraud scheme, particularly statements by the defendant, by opening the door to such evidence. The Government respectfully submits that it does not, and the defendant should be precluded from eliciting his own hearsay statements. The Government agrees, however, that cross-examination about the statements described during the witness's specific direct testimony is appropriate, subject to the bounds of Rules 403 and 803(3).

     During the direct examination of the defendant's coconspirator, Iosif Bondarchuk, the following exchanged occurred:

     **Q:** You testified earlier that you started engaging in the scheme for the money. To your understanding, why was the defendant engaged in the scheme?

     **A:** Also for the money initially. . . .

(Tr. at 477:20-23.) The witness added:

     And then I believe he, later in the scheme, he told me he had kind of a back and forth history with some of the grading companies, particularly PSA, and that he wanted to get some form of revenge on them, potentially expose them and their ways in grading cards or charging for their services or putting false values on cards, potentially knowing that there are issues with cards and not acting on those issues in order to protect their name.

(Tr. at 477:23-478:5.) Although describing the overall nature of the defendant's complaints about PSA and other grading companies, Bondarchuk was not asked about, and did not testify about, Curcio's statements purporting to describe historical facts behind those complaints—a version of history that is in dispute.

After the Court inquired about how this limited testimony impacts cross-examination, defense counsel responded that "pretty much everything that we want to elicit from this witness in that vein, the door has been opened." (*See* Tr. at 497:3-18.) While the Government acknowledges that the defense is permitted to inquire on cross-examination about Bondarchuk's description of Curcio's statements about motivation to the extent already raised by Bondarchuk's direct testimony, the Government nevertheless anticipates objecting if the defendant seeks to elicit or affirmatively offer evidence regarding the defendant's purported beliefs about PSA pursuant to Rules 803(3) and 403. For example, the defendant may seek to impeach Bondarchuk's description of Curcio's statements, inquire about when and under what circumstances the statements were made, explore the connection or lack of connection between those statements and other relevant events, and similar permissible cross-examination. The defendant may not, however: (1) illicit testimony or seek admission of Curcio's out-of-court, backward-looking narratives summarizing past events or Curcio's purported historical motivation through Bondarchuk's testimony or with documents; or (2) seek admission of such statements through other witnesses who will testify at trial.

"[T]he Rules of Evidence do not simply evaporate when one party opens the door on an issue." *United States v. Bishop*, No. 23-1735, 2025 WL 3241555, at *3 (3d Cir. Nov. 20, 2025); *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 784 (5th Cir. 2018); *Houlihan v. City of Chicago*, 871 F.3d 540, 553 (7th Cir. 2017), *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 645 (7th Cir. 2011). As explained in greater detail in the Government's letter dated January 14, 2026 (Dkt. 81), Rule 803 provides only a limited exception for "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) . . . but not including a statement of memory or belief to prove the fact remembered or believed . . . ." Fed. R. Evid. 803(3). When a defendant seeks to admit his statement under Rule 803(3), courts are clear that such statements must be *forward facing*. *See United States v. Harwood*, 998 F.2d 91, 98 (2d Cir. 1993) ("[T]he statement must face forward, rather than backward" to satisfy Rule 803(3)). This restriction is necessary to prevent this limited exception from "swallowing the hearsay rule." *United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991); *see also Shepard v. United States*, 290 U.S. 96, 106 (1933) ("There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored."); *United States v. Emmert*, 829 F.2d 805, 810 (9th Cir. 1987) ("The state-of-mind exception does not permit the witness to relate any of the declarant's statements as to *why* he held the particular state of mind. . . ." (quoting *United States v. Cohen*, 631 F.2d 1223, 1225 (5th Cir. 1980) (emphasis added)).

Curcio's often lengthy statements to Bondarchuk in approximately March through May 2023 recounting events occurring sometimes years prior cannot come in under Rule 803(3). For example, the documents the defense has flagged as potential exhibits for Bondarchuk's cross-examination are primarily backward-looking statements about events that purportedly "started" "2 years ago". (*See* GX 234; *see also* GX 236, 237, 238 ("what ended up happening").) Curcio's

complaints and narrative description of how PSA purportedly mistreated him in the past do not reflect his contemporaneous state of mind as envisioned by the narrow scope of Rule 803(3), and are not within the scope of the direct testimony,[1] particularly given that these statements were made after Curcio and Bondarchuk had already defrauded numerous victims. Curcio told Bondarchuk about wanting to get "revenge" against PSA only after Curcio: (1) engaged in many of the fraudulent transactions at issue in this case; (2) received a considerable amount of money from victims that he did not return; (3) was told by PSA about issues with the cases and labels on the cards he was selling and/or trading; and (4) was told by victims about issues with the cases and labels. Permitting Curcio's self-interested, hearsay description of historical events, which are not subject to cross-examination, were made after many of the relevant events already occurred, and are unreliable and inadmissible under Rule 803(3), would also be prejudicial under Rule 403.

The Government maintains that, even in light of the above-identified testimony at issue, Curcio may not have free rein to ask about topics not elicited on direct examination or seek admission under Rule 803(3) of impermissible hearsay that satisfies neither Rule 803(3)'s requirements nor Rule 403's balancing test.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by:    /s/ _____
David R. Felton
Kingdar Prussien
Cecilia Vogel
Assistant United States Attorneys
(212) 637-2299/-2223/-1084

cc:    All counsel of record (by ECF)

---

[1] The Government anticipates that admissible evidence about the historical background between Curcio and rating agencies, particularly PSA, will be offered through other witnesses. Curcio thus may explore those facts through evidence other than his own inadmissible hearsay statements.