# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

TELEPHONE: +1-212-455-2000
FACSIMILE: +1-212-455-2502

Direct Dial Number
+1-212-455-2542

E-mail Address
martin.bell@stblaw.com

January 15, 2026

BY ECF & EMAIL

Re: *United States v. Anthony Curcio*, 24 Cr. 312 (RA)

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Dear Judge Abrams:

We represent Anthony Curcio in the above-captioned matter. We write in response to the Government's letter of January 15, 2026 regarding the cross-examination of Joseph Bondarchuk.

After yesterday's trial session, which featured the first part of the cooperating witness's testimony, the Court made the following observations:

> So it seems like some of the issues that I thought were going to be at issue on defendant's cross were raised on direct, and I'm just wondering what is there left, do you think, for me to rule on in the morning?

Tr. 497

> […] I just wanted to see because I was just surprised to hear some of the things I thought were what you were hoping to keep out. And so since you elicited that, I just wanted to have a sense of what's left. But you're free to submit a letter. And I'll let you know in the morning.

Tr. 498.

The Court's observation is, of course, correct. The Government elicited testimony from Mr. Bondarchuk that opened the door to most, *if not all,* of the full array of topics Mr. Curcio sought to explore: "his enmity towards PSA (hearsay that nevertheless comes in as proof of motive) and plan and intent to collect enough information to publicly embarrass PSA

(hearsay that nevertheless comes in as proof of intent and plan)." Gov. Jan. 15, 2026 Ltr. at 2.[1]

The Court asked the Government whether, in light of its clearly having opened the door to the full scope of this examination on direct, there were any *leftover* areas where there was still room for the Court to rule. Rather than offer a serious response to that question – to which the correct answer is seemingly "no" – the Government has both doubled down and doubled back, attempting to find solace in relitigating its earlier arguments regarding Rule 803(3) (but quietly sidestepping the Government's analysis from its Jan. 15, 2026 letter for why contemporaneity and continuing mental states cover the statements during the period at issue).[2]

To be clear:

- The Court should rule that the testimony elicited by the Government on direct examination thus far has opened the door to each of these topics. To revive a point made in a different context earlier in the trial, while parties' presentation of evidence is fixed by substantive law, the scope of cross-examination is necessarily broadened as the Government develops its case-in-chief and opens new avenues for contradiction. That is, what may be inadmissible at the outset of trial under Federal Rules of Evidence 401 and 402 may well be admissible at some point during the course of trial as the Government elicits certain testimony. *United States* v. *Gambino*, 951 F.2d 498, 503 (2d Cir. 1991) (holding that Defendant's testimony claiming to have no drug connections and never knowing or doing business with anyone in the Mafia "opened the door" to cross-examination designed to show the contrary); see also Fed. R. Evid. 611(a). That has happened here, and not only in the single place in the record that the Government chooses to acknowledge. *See*, *e.g*., Tr. 463 (conversations regarding unloading Curcio's cards, which allegedly led to the scheme); Tr. 474 (Curcio statements regarding a second, special phone to reach him on once the scheme had allegedly commenced); Tr. 478 (Curcio's supposed financial motivation for the scheme); Tr. 477-78 (Curcio's motivation to get back at PSA); Tr. 479-80 (Curcio's statements regarding his love of and need for money generally); Tr. 481 (Curcio

---

[1] The Government also does not appear to contest what is obvious: that the *absence* of statements from Mr. Curcio to Mr. Bondarchuk on certain topics at particular times likewise comes in, as it does not constitute hearsay testimony at all.

[2] The Government does assert that many of these statements happened only well after the fraud started. We do not agree. The existence of some communications to this end in text form does not preclude the topics having earlier been discussed orally, and we should be allowed to elicit these oral statements. For a period of two years, Curcio repeated these complaints to anyone who would listen. A January 2024 text does not mean that he wasn't echoing his own gripe to the same person from September 2023. And given the Second Circuit's treatment of continuous mental process, that shouldn't matter anyway.

    on his travails with eBay); Tr. 481 (Curcio's being banned on other websites); Tr. 487 (Curcio's relationships and communications with multiple purported victims); and pretty much the rest of Bondarchuk's testimony to this point.

- The Court should likewise rule that, in the alternate, the topics can be explored and hearsay statements elicited under Rule 803(3), for the reasons set forth in the Government's January 15 letter.
- The Court should rule that, in any event, the hearsay statements to this end are also admissible under Rule 807's residual exception, an argument Mr. Curcio advanced yesterday and to which the Government has yet to respond.

The existence of the latter of these, the residual exception, underscores an important point. The purpose of the hearsay rules – Rules 803(3) and 807 in particular -- is not to throw up complicated roadblocks to testimony – and even more complicated roadblocks to testimony elicited by the defense – for their own sake. It is to ensure that what testimony comes in carries the indicia of basic reliability – regardless of what the indicia of reliability look like. Likewise, the purpose of the "door opening" doctrine is not allowing prosecutors to find ways to craft asymmetrical verbal obstacles to coherent questioning, but to reflect principles of fundamental fairness so that we can ask questions about the territory the Government has already trod.

With no real remaining issues left to rule on, we ask that the Court deny the Government's request under the theories above and let Mr. Curcio meaningfully cross examine the cooperating witness in this case.

As always, we thank the Court.

                              Respectfully submitted,

                              */s/ Martin Bell*
                              Martin Bell
                              Meredith Karp
                              Patrick Barry
                              Nicolas Lussier
                              Wendy Wu
                              Gineen Abuali