

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

January 16, 2026

**BY ECF**

The Honorable Ronnie Abrams
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Anthony Curcio*, 24 Cr. 312 (RA)

Dear Judge Abrams:

    The Government respectfully submits this letter following the discussion in at the end of the Court session on January 15, 2026 regarding the (1) timing of the refund and dual intent limiting instructions, and (2) defendant's claim that GX 214, which was previously admitted into evidence with the consent of the defense,[1] somehow relates to uncharged conduct.

    As to the former item, the Government anticipates that an appropriate time for the Court to provide the refund limiting instruction will arise today during witness Darren Adams' testimony and the dual intent limiting instruction during or at the conclusion of cross-examination of witness Iosif Bondarchuk. The Government will make the request for those instructions at the point of the relevant testimony.

    As to the latter issue, defendant's assertion that GX 214 relates to uncharged conduct is contrary to the Indictment's clear, plain text; the Government's representations in at least three pretrial submissions; and the record to date.

    First, the Indictment's operative language (the statutory allegations) is quite broad and covers the conduct in GX 214. As charged, "in order to induce victims to pay more money for sports and Pokémon trading cards than they otherwise would have paid," Curcio and his co-conspirators "agreed to and did make and cause to be made false statements regarding the grade assigned to the cards by Company-1, when, in truth and in fact," they "knew that Company-1 had not assigned the grade to the cards that they represented." (Ind. ¶ 14). This plain language covers misrepresenting the grade of both counterfeit and real cards, since the cards in neither category had been assigned by Company-1 the grades represented by the defendant.

---

[1] Consistent with Your Honor's Individual Rules of Practice in Criminal Cases, on Monday, January 12, 2026, the Government notified the defense of its intent to admit GX 214 and other exhibits during the testimony of Iosif Bondarchuk.

Second, the Government has repeatedly made clear that its evidence of the charged scheme would include such evidence in its pretrial motions *in limine* and communications with defense counsel. *First*, on December 4, 2025, during a meet-and-confer between the parties, in an effort to streamline the then-anticipated motions *in limine*, the Government told the defense that the theory of the case as described in the Indictment is broader than defense counsel's narrow view of an upcoding scheme without modification or fabrication of trading cards. Subsequently, on December 18, 2025, the Government wrote the following in its opposition to the defendant's motions *in limine*, specifically citing, quoting, and attaching the text message exhibit the defendant surprisingly (and belatedly) complains about:

> Curcio even described in his book a supplier's printing on card stock sheets a 1952 Topps Mantle card, (Ex. A at 90-91), and then later discusses with Bondarchuk, as part of the charged fraud, his desire to counterfeit the *very same card* on card stock sheets. (*See* Ex. 1 at 2 (left side of message thread) ("[T]he pigment printer I have, along with being able to alter all aspects of graphics/design – *I want to get some card stock and straight up make a card. . . . The 1952 Topps [M]antle* or 51 bowman I have right now. . . . The older cards would be easiest" (emphasis added))).

(Dkt. 67 at 9-10 (emphasis in filing on docket); Dkt. 67-1).

Moreover, in the attached December 28, 2025 correspondence with the defendant, attached hereto as Exhibit A, the Government made clear that the charged fraud involved "creat[ing] cards."

> We note here, however, that the charged fraud itself was achieved through various means and is not confined to one particular methodology, though it had the same overarching goal. Any attempt to artificially cramp the charged conspiracy to something much narrower is misguided and atextual. Indeed, as charged, the defendants agreed to (a) alter *and create cards*, card holders, and labels, and (b) use real and fake third parties and identities to deceive victims about whether PSA had ever graded certain trading cards, awarded those cards a particular grade, and catalogued those cards with particular certification numbers.

(Ex. A at 2-3) (emphasis added).

Finally, in a January 5, 2026 letter motion supplementing the Government's requests to charge, proposed voir dire, and *motions in limine*, the Government again reiterated that the charged fraud involved "creat[ing] cards."

> As charged, Curcio and his co-conspirators agreed to (a) alter *and create* trading cards, card holders, and labels, and (b) use real and fake third parties and identities to deceive victims about whether PSA had graded certain trading cards, awarded those cards a particular grade, and catalogued those cards with particular certification numbers.

(Dkt. 71 at at 5) (emphasis added).

      Nothing in the record is to the contrary. The defendant cites to the Government's reference to "real trading cards" being used in the fraud scheme during its opening statement. But the mere reference to the use of real cards during openings is not an admission that counterfeit cards were *not* used. The Government is not aware of any law, and the defendant cites none, limiting the Government to introduction of evidence explicitly referenced during opening statements; indeed, that would be contrary to the practice in almost every trial in this district. The determinative question is whether the evidence is admissible and relevant to the scheme charged in the Indictment, which it plainly is as it not only falls within the plain language of the "to wit" clauses of the charged offenses but is inextricably intertwined with Curcio's course of conduct with Bondarchuk and is substantial evidence of his intent to make false representations regarding the cards being sold to victims.

      Finally, the Court's *in limine* ruling is inapposite since, by its terms, it expressly relates only to "prior" card counterfeiting schemes, such as that described in Curcio's memoir, and not the pending, broadly charged scheme which encompasses card counterfeiting. (Dkt. 80 at 3 (*in limine* ruling referring only to "*prior* card counterfeiting") (emphasis added)). As previously represented, and consistent with the Court's ruling, the Government has no intent to introduce evidence of *prior* card counterfeiting schemes apart from the excerpts from Curcio's memoir that the Court has already ruled are admissible.

      Respectfully submitted,

      JAY CLAYTON
      United States Attorney

by:   /s/ _____
      David R. Felton
      Kingdar Prussien
      Cecilia Vogel
      Assistant United States Attorneys
      (212) 637-2299/-2223/-1084

cc:    All counsel of record (by ECF)