UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 24 Cr. 312 (RA)

ANTHONY CURCIO,

Trial

Defendant.

------------------------------x

New York, N.Y.
January 28, 2026
11:15 a.m.

Before:

HON. RONNIE ABRAMS,

District Judge

APPEARANCES

JAY CLAYTON
United States Attorney for the
Southern District of New York
BY: DAVID R. FELTON
CECILIA VOGEL
KINGDAR PRUSSIEN
Assistant United States Attorneys

SIMPSON THACHER & BARTLETT LLP
Attorneys for Defendant
BY: MARTIN BELL
MEREDITH KARP
PATRICK BARRY
NICOLAS LUSSIER
WENDY WU
GINEEN ABUALI

Also Present:

Angelica Coto, Paralegal Specialist USAO
Christopher Campbell, FBI Special Agent

(Trial resumed; jury not present)

THE COURT: So, have you not sent anything back yet? I thought the idea was to send back what was not in dispute.

MR. PRUSSIEN: We have sent back the physical printed transcripts, and now we have digital copies of the transcripts and the evidence that is not in dispute on the laptop to send back as well.

THE COURT: OK. And so tell me exactly what is in dispute.

MR. BELL: Sure. I raised the dispute so it may make sense for me to put this forward.

THE COURT: Sure.

MR. BELL: So item number 8 requests the same card that was sold to Joe Baudo and then resold with the same cert number. The record in this case shows four cards that Baudo received from the seller. And just for the record, they are Government Exhibits 1204, 1224, 1226, and 1219. None of those cards were subsequently resold to another buyer, and we understand three of them, including 1226, which is sort of at the center of this dispute, Mr. Baudo gave to the FBI, and there they stayed. They have been in the FBI's possession ever since. That's evident in the 3500 material, 3503-0033, and I don't think it's seriously disputed. And so we maintain that there is not, therefore, a card that was actually sold to Baudo and resold.

What there is in the record is a card that shares a certification number with one of those cards that was later sold to Mr. Grossbarth. That's Government Exhibit 1703. The government wants to send in 1703 as responsive to request number 8. It's not. It is not, in fact, the same card. It is a different card. It does bear the same certification number, but the jury explicitly asked for the same card that was sold to Joe Baudo and then resold with the same certification number.

Likewise, I understand that the government has an interest in sending in 1707, another card that was sent to -- I think the hard copy version -- what was 1707?

MR. FELTON: 1703 is the Curcio -- images of the cards before he sent them to Baudo -- sorry.

THE COURT: That's OK. I mean, let me just stop you there. I want to hear the rest. But is there a way just to bring the jury in and explain, say, you know, "I see that you have asked for this. What the record does establish there is," and explain what it is. "I don't know if you are asking for the card that was sold by Baudo and then" -- you know what I mean? Just to ask them for clarification.

MR. BELL: I think that the jury can, sort of, clarify what they are asking for. The major concern I have is this: There are, as your Honor knows, cards in this case, individual cards, that were, in fact, sold and then resold, like when

there was a refund in the intervening period, right. And so I worry that just sending these cards back as responsive would essentially constitute -- well, one, they are not -- the cards aren't responsive, so it would be misleading and confusing in that sense.

THE COURT: Right, but I am just trying to find a solution. I am not going to not send anything back. But we can clarify with them. So the question is: How should we clarify?

MR. BELL: So I think that the way -- I think that there are really two options here. I think the first would be to say something like: The record does not contain a card that matches the description, however, please ask us if, for example, you are looking for, you know, a subset of cards that are responsive to the same certification number, or, a card from Baudo that shares the same certification number as another card that was sent, or something like that.

We can make suggestions, but ultimately it's got to be responsive to what the jury asks for, and the jury sat through five hours of, you know, summations yesterday that were replete with exhibit numbers. They can ask that question.

The other potential solution which I think I rather favor, if only because it obviates the need for more of these disputes and, kind of, takes us out of this, where we belong, is to just send the computer back with everything. They have

got the entirety of the exhibits there. They can identify them in the way that they find appropriate. I know that it's, you know -- it's not an atypical practice in this courthouse. I know that the practice has varied among individual judges, but this may be one instance where, given these facts and the probability of these types of disputes, it makes sense to send everything back --

THE COURT: I am typing what you are saying.

I want to hear what the government's position is.

MR. FELTON: Your Honor, let me be clear. The jury is asking for the single -- what I personally view as the single most incriminating piece of evidence in this case, which we featured prominently in closing, and Mr. Bell is proposing we send everything back with them. I think we need to address the specific request.

THE COURT: I agree. I am going to add a line at the end saying, as an aside, If it would be helpful for us to send the entirety of the electronic exhibits or any other exhibits back, let us know.

But how would you propose that we -- tell me what the confusion is here.

MR. FELTON: So there is no dispute that on April 27, 2023, Baudo received a Michael Jordan card with a cert number ending in 036. There is also no dispute that's in evidence. There is also no dispute, it's in evidence, that on

September 11, 2023, about five months later, Curcio sells to Grossbarth the same -- a Michael Jordan card with the same cert number ending in 036. It's also no dispute in the record that Baudo gave the card with that cert number ending in 036 to the FBI. So Curcio sold five months later a card that he had previously sent to Joe Baudo, and that Joe Baudo had given to the FBI.

In closing, we said, you know, there is only one real card --

THE COURT: Sorry. That Michael Jordan card, is it a card that was sold to Joe Baudo and then resold with the same certification number?

MR. FELTON: Yes, your Honor. We have the physical card and we have images of the card from Baudo and images of the card from Grossbarth.

MR. BELL: So we need to be careful in how we describe this. I think the answer to that question is actually, no, it's not the same card. There is a card that Joe Baudo received that we sent to the FBI and that they remain in the possession of. And then there is a separate card with the same certification number that the evidence suggests Mr. Curcio sold to other people, including Mr. Grossbarth. But the answer to your Honor's question is, no, they are not the same card. That's the reason why this is responsive --

THE COURT: OK.

MR. BELL: -- or, rather, isn't responsive.

THE COURT: Mr. Felton, can you explain?

MR. FELTON: But, for every card in this case, we rely on Curcio's representations as to what the cert number is for the card. This is no different than those. When Mr. Bell says in other cases it's the same card, in other cases it's this, no, it's the same thing. We always say he is selling what purports to be the lone-in-existence PSA-graded card with this certification number. So this is no different than everything else in the case.

It's an especially incriminating piece of evidence. That's why we featured it so prominently in summation. It's clearly responsive to what the jury is asking for. I think if we want to clarify that, in fact -- like, if Mr. Bell is saying -- I could just repeat the exact words I used in closing, which would clarify the factual confusion. I doubt Mr. Bell would want that, even though I don't think he is disputing the accuracy that in April 2023, Curcio sent to Baudo a card with this certification number. In September 2023, Curcio -- and Baudo gave that card to the FBI. In September 2023, Curcio sells a card with the same PSA certification number to Grossbarth.

And the Baudo physical evidence that -- we would submit four things go back to the jury for this: The physical card which the FBI has from Baudo -- and all four show the same

certification number -- as well as an image of the card from Baudo that Baudo took, and then images of the card from Grossbarth; one before he got it, another one that he took after he got it, with Grossbarth's branding on a pad underneath an image of this card.

MR. BELL: Sending those back without more, or without explanation, as responsive to this request, which they are not, would be inherently confusing and would, I think --

THE COURT: Explain why it would be confusing.

MR. BELL: Because they are asking for the same card, and it's not the same card. In other words, I think that -- and this is, again, a case in which we have had instances in which the same card was sold once and then again. If they -- had they asked for, like, you know, the cards that were sold to Joe Baudo, and then a card that was sold with the same certification number later on, then we wouldn't be having this conversation. But the problem is that to send those back would indicate that this is akin to those other cases, those other instances in which the same card actually was sold once and then again.

Were that the case, you could send back images of each of those because they would, in fact, be the same card. But this would be -- this would take, I think, a leap in terms of actually marshaling the evidence that is impermissible because it's not what they asked for.

MR. FELTON: Your Honor.

MR. BELL: They asked for the same card. We know it's not the same card because that card stayed within the physical possession of the FBI after Baudo gave it to them. Then later on, there is another card with the same certification number that is sent.

So generally, Judge, to the extent that we feel compelled to clarify something for them in a way that leads to a follow-up request, a productive one, I am OK with, you know, crafting something along those lines. But we can't, can't just send those cards back as responsive when, as a -- not just a technical matter, as a real matter, not one of those would be.

MR. FELTON: Your Honor, for question number 6, which the parties agreed to and have the exhibit, the jury asked for "visuals of card with crease Michael Jordan." It is no more clear from the trial record in this case that that card is, in fact, the same card than that this is the same card. What we have been proceeding as is, when they ask for a card, they mean a card with an identified certification number, right. Like, there is a card with a crease that's sold several times in this case, but there is no conclusive testimony from -- in the case that it is, in fact, the same card.

MR. BELL: Judge, it literally can't be the same card because we know what happened to it. I don't think that in determining how to handle this we should be blind to the fact,

willfully blind to the fact, that Joe Baudo gave that card to the FBI. It's not the same card. And so I think that -- again, there is a way to answer this that can be crafted that prompts the jury to, you know, clarify what it is that they actually want, but simply sending these cards back in response would be misleading, confusing, and inappropriate.

THE COURT: Look, it is -- yeah, obviously, it's clear what the confusion is and what they mean by "the same card."

I mean, would you be OK with me saying something like, I believe we have sent back materials -- we have already sent back materials responsive to your questions 1 through 7 --

MR. BELL: Just to clarify, Judge, I think we held back card number -- request to card number 7 because there was an overlap with 8, and we wanted to see how 8 was resolved. So, you know --

THE COURT: Is "Baudo card image Michael Jordan," is that unclear?

MR. FELTON: Your Honor, there are two different Michael Jordan cards that Baudo was sold from Curcio. One of them is the card that's at issue in 8. One of them has sort of -- is a different Michael Jordan card.

MR. BELL: The '89, right?

MR. FELTON: The '89 is the one we are talking about in number 8. For number 7, there is an '89 and -- is it an '86 or an '87? It's an '86, I believe. So there's, I mean -- the

gist of what the jury is asking for in 8 is clear as can be, your Honor. I think saying just, No, nothing is responsive, I think, would be completely misleading. I don't think that's an option here.

THE COURT: So with respect to 7, what should I ask them?

MR. FELTON: I am not sure there is anything. I mean, they asked for an image, but there are two different cards, which would be Exhibits 1224 and 1226, which are both in evidence.

MR. BELL: I don't think there is necessarily something to ask with respect to -- with respect to question number 7. I think we can send that back once we know how 8 is going to be resolved because I think most of the resolutions to 8 don't necessarily implicate --

THE COURT: Can I say with respect to 7, Are you asking for Exhibit, and then just say the two exhibit numbers?

MR. BELL: That's fine.

THE COURT: What are the exhibit numbers again? You just said it. Sorry.

MR. FELTON: 1224 and 1226. And just for the Court's awareness, 1226 is the one that has overlap with number 8.

MR. BELL: And they do ask for a singular one, so it may be good to throw an and/or in there. "Are you asking for this one, that one, or both?" Because they both are

technically Baudo card images. And that takes care of 7. That part is easy, I think.

THE COURT: So I was going to start with, "I believe we have already sent back materials responsive to your questions 1 through 6. I would like a little more clarity on numbers 7 and 8. With respect to 7, are you asking for Exhibit Number 1224 and/or 1226? And with respect to number 8, are you asking for" -- then the question is how I finish this sentence.

MR. FELTON: "Are you asking for cards with the same certification number sold to two different witnesses in the case?"

"When you say 'the same card,' are you referring to the same certification number?"

MR. BELL: I think Mr. Felton's first sentence is a reprise of his closing that we don't need. I think that last sentence is appropriate.

THE COURT: How about this -- so, I read you the first two lines. "And with respect to number 8, when you say 'the same card,' are you referring to cards with the same certification number?"

MR. BELL: I think that's reasonable. "Or to something else," I think would be the alternative.

MR. FELTON: I just don't know what else they could be referring to. I think --

MR. BELL: We ask questions because we want to get

answers. That's something the jury can tell us.

THE COURT: It can't hurt to say that.

All right. "I believe we have already sent back materials responsive to your questions 1 through 6. I would like a little more clarity on questions 7 and 8. With respect to number 7, are you asking for Government Exhibit Number 1224 and/or 1226? And with respect to number 8, when you say 'the same card,' are you referring to cards with the same certification number or something else?"

MR. BELL: And then the only other thing that I would do is echo --

THE COURT: I was going to add in that line at the end saying, you know, "As an aside, to the extent it would be helpful, I am happy to send back all of the electronic exhibits and/or physical exhibits as well."

MR. BELL: That's great. Thank you, Judge.

THE COURT: All right. Why don't we bring the jury in, please.

(Jury present)

THE COURT: Good morning, everyone. Everyone can be seated. Thank you.

So, thank you for your two notes. First, your note regarding your schedule, I appreciate that. Helpful for us to plan.

And second, with respect to your second note

requesting eight particular items, I believe we have already sent back materials responsive to your questions 1 through 6. I would like a little more clarity on questions number 7 and 8.

So with respect to -- and you can just write me a letter after this.

With respect to number 7, are you asking for Government Exhibit Number 1224 and/or 1226? And with respect to number 8, when you say "the same card," are you referring to cards with the same certification number or something else?

And I am happy to just clarify. Your question number 7 said, "Baudo card image Michael Jordan." So I was wondering if you are talking about 1224 and/or Government Exhibit 1226.

And with respect to 8, you asked for the same card that was sold to Joe Baudo and then sold with the same certification number. And I just want clarity on, when you say "the same card," are you referring to cards, you know, perhaps of the same image with the same certification number or something else?

So if you can send another note just with clarity on that. And then I will just say, as an aside, if it would be more helpful for you, I can send back all of the electronic exhibits at once and/or all the physical exhibits. Whatever would be helpful to you. So just write me back. Thank you so much.

MR. PRUSSIEN: Your Honor, would it be possible to

show the jury 1224 and 1226 now so that they can actually see them, so they can know which one they are asking for, as opposed to saying theoretical --

THE COURT: Any objection?

MR. BELL: No objection.

THE COURT: Why don't we show you 1224 and 1226. And then if you want to see the physical copy, we will send that back.

MR. PRUSSIEN: For the record, the one on the left is 1224.

MR. BELL: Mr. Prussien, sorry. Can we confer very briefly?

MR. PRUSSIEN: Yes.

(Counsel conferred)

MR. PRUSSIEN: Yes. Without objection, the one on the left on your screen that we are pulling up now, that is 1224, and the one on the right is 1226.

THE COURT: All right. So, I look forward to getting another note, and we are happy to clarify anything else. Thank you so much.

(Jury not present)

THE COURT: Why don't we wait here for a minute.

MR. FELTON: Your Honor, I am a little concerned that with those side-by-sides up, which related only to request 7, they may be thinking they were seeing a side-by-side of the

same card for number 8 and they had different certification numbers, and I am concerned we may have inadvertently created a misimpression that, in fact, the same certification number wasn't sold twice because of our wordsmithing of number 8. I am a little concerned.

MR. BELL: Judge, you had just framed this for them in terms of response to question 7: Did you mean this one, that one, or the other one? And then you showed them this one and that one, which was perfectly fine. I actually don't see a basis for confusion there. And I think that, frankly, if there is additional confusion, a follow-up note will tell the tale, and we can respond to that.

THE COURT: Look, I said, With respect to question 7, are you asking for this exhibit or that exhibit? And then with respect to 8, I was asking a different question. And then, you know, the government asked to show the exhibits. I am not sure what else we can do about it.

MR. FELTON: Yes, your Honor. Let's see what the jury says.

THE COURT: OK.

MR. FELTON: We can maybe make a single sentence when they come back in: The side-by-side was purely with respect to question number 7.

MS. KARP: I would say the record is clear. And it was the government's request to put them up on the screen in

the first place.

MR. FELTON: I don't think there is any harm or prejudice to a single sentence: To be clear, the two images you saw on your screen before related solely to question 7.

THE COURT: Let's see what they ask.

(Pause)

THE COURT: While we are sitting, waiting, some administrative things. I am going to mark the voir dire questionnaire as Court Exhibit 1, the draft charge that we e-mailed you that we then discussed at the charge conference as Court Exhibit 2, and then the draft charge that I read and was given to the jury as Court Exhibit 3. The first note about the schedule is Court Exhibit 4, and this last one is Court Exhibit 5. So I just want to make sure we are all on the same page.

MR. PRUSSIEN: I was inquiring whether we can send back the materials for requests 1 through 6 that there is --

THE COURT: I thought we did that already.

MR. PRUSSIEN: They are sitting there.

THE COURT: You didn't send them back?

MR. PRUSSIEN: We sent back transcripts, and these are additional materials.

THE DEPUTY CLERK: Sorry, I thought this was all the electronic --

MR. FELTON: Number 4 and 6.

THE COURT: All right. I was worried that sending

back the laptop would make them think all the electronic exhibits are there, and they are not. So it may be a little confusing, but we will fix it.

(Pause)

THE COURT: This is going to be Court Exhibit 6. "Can we please have all the digital evidence."

So now we have to ask for the computer back.

OK. Allison, do you mind? Thank you.

MR. FELTON: Your Honor, we still need to resolve the -- what to do with 7 and 8, though, right?

THE COURT: I mean, you guys put it up. You know what I mean? Like, I asked one question about 7 and one question about 8.

MR. BELL: Isn't that moot now? It's all going back anyway, right? Wasn't that the point?

THE COURT: If they ask another question, if they want clarity -- I am not sure what else I can do at this point. If you are just saying I should, what, indicate to them what the -- what they want?

MR. FELTON: Where to look for the responsive materials to those questions.

THE COURT: But they have Baudo's testimony, right? They have other --

MR. FELTON: They don't have Grossbarth's testimony. I guess they will if they get the full transcript, which they

don't have yet. The evidence -- they won't know where to find the, sort of, same card to a different seller -- to a different buyer.

MR. BELL: They can ask for it.

THE COURT: Right, but when I said, "And with respect to 8, when you say 'the same card," are you referring to cards with the same certification number?"

MR. FELTON: I guess it's still an outstanding inquiry.

THE COURT: Right. I mean, I am here whenever they come back.

So, we are going to take the laptop back, put all the exhibits on it. Yeah, I don't know what else we can do.

MR. FELTON: Understood, your Honor.

THE COURT: I mean, I get the concern. I just -- I don't know what else we can do.

(Pause)

MR. BELL: Does that take us up to Court Exhibit 6, Judge?

THE COURT: That does. That was Court Exhibit 6.

All right. So I will be here if you need me, if we hear anything else.

Mr. Bell, do you want to look at what's being sent back on the clean computer?

MR. BELL: Sure.

THE COURT: All right. Just let me know if you need me. I will be here.

(Recess pending verdict)

THE COURT: So I know you are waiting for Mr. Curcio, but I assume you all know we have a note indicating that they have reached a verdict.

MR. BELL: Yes.

THE COURT: We will wait for Mr. Curcio.

(Pause)

THE COURT: All right. We are going to bring the jury in.

(Jury present)

THE COURT: Everyone can be seated. Thank you.

So I understand, Mr. Foreperson, that the jury has a verdict. Is that correct?

JUROR: Yes, your Honor.

THE COURT: OK. So what I am going to do is I am going to go through the verdict form with you publicly.

So as to Count One of the indictment, participating in a conspiracy to commit wire fraud, how do you find the defendant, Anthony Curcio?

JUROR: Guilty.

THE COURT: As to Count Two of the indictment, wire fraud, how do you find the defendant, Anthony Curcio?

JUROR: Guilty.

THE COURT: Mr. Bell, would you like me to poll the jury?

MR. BELL: Yes, please, your Honor.

THE DEPUTY CLERK: Juror No. 1, is this your verdict?

JUROR: Yes.

THE DEPUTY CLERK: Juror No. 2, is this your verdict?

JUROR: Yes.

THE DEPUTY CLERK: Juror No. 3, is this your verdict?

JUROR: Yes.

THE DEPUTY CLERK: Juror No. 4 is this your verdict?

JUROR: Yes.

THE DEPUTY CLERK: Juror No. 5 is this your verdict?

JUROR: Yes.

THE DEPUTY CLERK: Juror No. 6, is this your verdict?

JUROR: Yes.

THE DEPUTY CLERK: Juror No. 7, is this your verdict?

JUROR: Yes.

THE DEPUTY CLERK: Juror No. 8, is this your verdict?

JUROR: Yes.

THE DEPUTY CLERK: Juror No. 9, is this your verdict?

JUROR: Yes.

THE DEPUTY CLERK: Juror No. 10, is this your verdict?

JUROR: Yes.

THE DEPUTY CLERK: Juror No. 11, is this your verdict?

JUROR: Yes.

THE DEPUTY CLERK: Juror No. 12, is this your verdict?

JUROR: Yes.

THE COURT: I am just going to meet the lawyers briefly at sidebar.

(Continued on next page)

(At sidebar)

THE COURT: All right. So here is the verdict form. Can I excuse this jury?

MR. BELL: Yes, Judge. Would it be -- if there are additional proceedings, can we have a quick break so that we can thank folks, frankly, and just sort of get Mr. Curcio ready for things to come, just have him calm down a second?

THE COURT: All right. So we can take a break, and I am going to thank the jury personally, and then I will come back in. OK.

MR. BELL: Thanks.

(Continued on next page)

(In open court)

THE COURT: So folks, now I really just want to thank you for your service. You have performed one of the highest and noblest obligations of citizenship. You have acted as finders of fact and administers of justice. And having worked with you over the last two-and-a-half weeks, I hope, but I think, I think and I hope that you will have this personal satisfaction of knowing that you have performed this important public duty, and that gives me great satisfaction as well.

When you leave the courtroom, you are free to go home. I mean, I am going to briefly stop by just to thank you personally, but you are free to go. And when I excuse you, you are no longer subject to any of my orders. So you are no longer under any obligation not to talk about the case. Just the same, you are under no obligation to talk about the case. It's entirely up to you. But now I will excuse you as jurors, and your jury service is a complete. And I am going to ask everyone in the courtroom to stand as a sign of respect for you.

(Jury excused)

THE COURT: As requested, why don't we take a short break. I will go back, thank the jury, and we will resume. And if you have any applications, I will be happy to hear them. Thank you.

(Recess)

THE COURT: All right. So do you have any applications at this time?

MR. FELTON: Your Honor, not at this time. We would just put on the record, given the change of circumstances now with the fact of the conviction and the January 20, 2026 memo from pretrial about the defendant's not perfect compliance with the treatment conditions, that the Court just currently reiterate to the defendant that he must comply with all conditions, including the treatment conditions. And we will confer with defense counsel to the extent we think any modifications of the bail conditions should be made in light of the trial verdict, but we don't have an application at this time.

THE COURT: OK. All right. Mr. Curcio, I just want to make sure you understand that, just the importance of complying with all the conditions of your release, whether you agree with them or not. They are the conditions that have been set by the Court, so it's important that you comply. All of your present conditions will continue, unless they are modified at some point in time, until the time of your sentence. And I think we should set a sentence date at this point in time.

MR. BELL: Your Honor.

THE COURT: Yes. Sorry, I am just looking at the calendar. Forgive me.

MR. BELL: For defendants who are not in custody, is

the customary gap at this point still about four months?

THE COURT: I was going to say about three-and-a-half. So I was looking at the calendar. So we are talking about sometime in May.

Do you have a preference? Do you all have scheduling issues that you want to advise me of?

MR. FELTON: Your Honor, the government is always ready. I think our preference would be the sooner, the better, in the reasonable range.

THE COURT: I am looking at May 13, which is just a little over -- just about three-and-a-half months.

MR. BELL: The only hard commitment, Judge, I have is at the end of the day. And so if your Honor is imagining something in the morning or early afternoon, we are flexible.

THE COURT: I could do it at noon or I could do it at 2:00.

MR. BELL: Either of those would be fine. Thanks, Judge.

THE COURT: All right. Why don't we say 2:00 p.m.

MR. FELTON: Your Honor, while, of course, we defer to the Court and are always ready, Special Agent Campbell has a conflict the 13th through the 15th. If there is any way to do it the 12th, maybe.

THE COURT: Do you want to say the 12th at 1:00 o'clock? Does that work?

MR. FELTON: Yes, your Honor.

THE COURT: OK. All right. So we will say May 12 at 1:00 o'clock. If for some reason that doesn't give pretrial enough time, I will let you know. But we will make sure not to do it between the 13th and the 15th.

OK. So as you may know, consistent with my rules, defense submissions will be due two weeks prior to sentencing, and the government's submission one week prior to sentencing. And the government should reach out to pretrial, you know, to provide the necessary information within one week, and defense counsel should arrange to have Mr. Curcio interviewed, to the extent he is willing to do so, within the next two weeks.

Are there any other applications or anything else we need to talk about at this time?

MR. FELTON: Not from the government, your Honor.

THE COURT: OK.

MR. BELL: Nor from us, Judge. It's been an honor to defend Mr. Curcio. We came out relatively short. I have no idea the circumstances that led to our being selected in response to that, but we appreciate the responsibility and the opportunity.

THE COURT: You did an excellent job, your whole team did, as did the government. We are adjourned.

(Adjourned)