UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY CURCIO,<br>     a/k/a "Brendan Wooley,"<br><br>Defendant. | 24 Cr. 312 (RA) |

**THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT ANTHONY CURCIO'S SUPPLEMENTAL
<u>RULE 33 MOTION FOR A NEW TRIAL</u>**

JAY CLAYTON
United States Attorney
Southern District of New York
The Jacob K. Javits Federal Building
26 Federal Plaza, 37th Floor
New York, New York 10278

David R. Felton
Kingdar Prussien
Cecilia Vogel
Assistant United States Attorneys
- Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 1

    *A.* *Ex Parte* Letters and Appointment of New Counsel ........................................... 1

    B. Trial Counsel's Other Representations ................................................................ 2

    C. Defense's Treatment of PSA at Trial.................................................................. 4

    D. Supplemental Rule 33 Motion ........................................................................... 7

ARGUMENT.......................................................................................................................... 8

    A. Applicable Law................................................................................................... 8

    B. Curcio's Trial Counsel Did Not Have a Conflict of Interest That Caused a Lapse in Representation..................................................................................... 12

        1. Trial Counsel Did Not Have an Actual Conflict of Interest ..................... 12

        2. Failure to Conduct a *Curcio* Hearing Is Not a Basis for a New Trial......... 15

        3. Trial Counsel's Performance Was Not Adversely Affected...................... 16

CONCLUSION..................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armienti v. United States*,
234 F.3d 820 (2d Cir. 2000)................................................................................ 10

*Burke v. United States*,
No. 20-4034, 2022 WL 175488 (2d Cir. Jan. 20, 2022).................................... 10, 11

*Frias v. United States*,
No. 1 Cr. 307 (JFK), 2009 WL 1437797 (S.D.N.Y. May 20, 2009) ...................... 18

*Holloway v. Arkansas*,
435 U.S. 475 (1978)........................................................................................... 16

*McDonough Power Equipment, Inc. v. Greenwood*,
464 U.S. 548 (1984)............................................................................................. 8

*Mickens v. Taylor*,
535 U.S. 162 (2002)........................................................................................... 10

*People v. Watson*,
26 N.Y.3d 620 (2016) ........................................................................................ 16

*United States v. Bilzerian*,
926 F.2d 1285 (2d Cir. 1991)............................................................................. 18

*United States v. Costello*,
255 F.2d 876 (2d Cir. 1958)................................................................................. 9

*United States v. Cote*,
544 F.3d 88 (2d Cir. 2008)................................................................................... 9

*United States v. Curcio*,
680 F.2d 881 (2d Cir. 1982)................................................................................. 1

*United States v. Farhane*,
634 F.3d 127 (2d Cir. 2011)................................................................................. 9

*United States v. Ferguson*,
246 F.3d 129 (2d Cir. 2001)................................................................................. 9

*United States v. Feyrer*,
333 F.3d 110 (2d Cir. 2003)........................................................... 10, 11, 15, 17

*United States v. Gambino*,
  59 F.3d 353 (2d Cir. 1995).................................................................................................. 9

*United States v. Garcia*,
  No. 21 Cr. 412 (JSR), 2024 WL 2032990 (S.D.N.Y. May 7, 2024) ....................................... 15

*United States v. Hild*,
  644 F. Supp. 3d 7 (S.D.N.Y. 2022) .................................................................................. 11, 17

*United States v. Israel Garcia*,
  No., 21 Cr. 412 (S.D.N.Y.) ...................................................................................................... 18

*United States v. John Doe No. 1*,
  272 F.3d 116 (2d Cir. 2001)............................................................................................... 10, 11

*United States v. Jones*,
  381 F.3d 114 (2d Cir. 2004)................................................................................................... 10

*United States v. Lemay*,
  No. 21 Cr. 00573 (MKV), 2026 WL 18625 (S.D.N.Y. Jan. 2, 2026)....................................... 11

*United States v. Leon-Lopez*,
  891 F. Supp. 138 (S.D.N.Y. 1995) ......................................................................................... 13

*United States v. Levy*,
  25 F.3d 146 (2d Cir. 1994).................................................................................................... 15

*United States v. McCourty*,
  562 F.3d 458 (2d Cir. 2009).................................................................................................... 9

*United States v. Sanchez*,
  969 F.2d 1409 (2d Cir. 1992)................................................................................................... 9

*United States v. Schwarz*,
  283 F.3d 76 (2d Cir. 2002)................................................................................... 10, 11, 13, 14

*United States v. Snype*,
  441 F.3d 119 (2d Cir. 2006).................................................................................................... 9

*United States v. Stantini*,
  85 F.3d 9 (2d Cir. 1996).......................................................................................................... 16

*United States v. Torres*,
  128 F.3d 38 (2d Cir. 1997)....................................................................................................... 9

iii

*United States v. Williams,*
    372 F.3d 96 (2d Cir. 2004).......................................................................................... 10

**Rules**

Fed. R. Crim. P. 33(a) ................................................................................................. 9
New York Rule of Professional Conduct 1.7, Cmt. 34............................................... 14
New York Rule of Professional Conduct 1.9.............................................................. 14

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to defendant Anthony Curcio's supplemental motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure (the "Supplemental Motion" or "Mot."). The defendant was convicted at trial of wire fraud and conspiracy to commit wire fraud for selling trading cards with fake Professional Sports Authenticator ("PSA") grades, which impacts the sale price of trading cards. The defendant argues that he is entitled to a new trial because his court appointed trial counsel, Martin Bell of Simpson Thacher & Bartlett LLP ("Simpson Thacher"), was constitutionally ineffective due to a conflict of interest. (Mot. at 2). The defendant contends the conflict stemmed from a prior and a separate concurrent representation by Simpson Thacher of corporate entities that have an indirect connection to PSA, which is one of the leading grading and authentication services for trading cards. (Mot. at 5-6). The defendant claims in his Supplemental Motion that trial counsel failed to pursue a defense strategy of discrediting PSA because of the purported conflict. Because trial counsel did not have a conflict and the purported conflict did not cause counsel to forgo a defense strategy, counsel was not ineffective and a new trial is not justified under Rule 33. Accordingly, the Supplemental Motion should be denied in its entirety.

**BACKGROUND**

### A. *Ex Parte* Letters and Appointment of New Counsel

On May 20, 2026, at the request of the defendant and during an in-person court conference, the Court relieved court appointed trial counsel Martin Bell from Simpson Thacher as counsel and appointed in his place current counsel, Esere Onaodowan. (*See* ECF No. 113). The Court did not hold a hearing to determine the character of a possible conflict pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982) (a "*Curcio* hearing"), nor did the Court make a finding that trial counsel had a conflict of interest.

1

The May 20, 2026 conference was prompted by a series of letters addressed to the Court submitted by the defendant *pro se* and *ex parte* dated May 4, 8, and 19, 2026. (ECF Nos. 111, 117, 119). In these letters, among other things, the defendant claimed his trial counsel may have a conflict of interest because of current and past representations of clients that have an indirect connection to PSA, and that this purported conflict may have impacted his trial counsel's defense strategy at trial to discredit PSA, including through cross examination of the PSA employee who was a prosecution witness at trial. In his letters, the defendant also requested a new lawyer. In response to the defendant's first two *ex parte* letters, trial counsel filed an *ex parte* letter explaining that there was no conflict of interest and that trial counsel had aggressively sought to discredit PSA within the bounds permitted by the Court, although counsel did not object to the appointment of new counsel. (ECF No. 118 ("Simpson Ltr.")). With the consent of current counsel, on June 10, 2026, the Court made public the *ex parte* letters from the defendant and trial counsel. (ECF No. 114).

At the May 20, 2026 conference, the Court permitted current counsel to supplement the pending Rule 33 motion on any issues current counsel wished to raise. On June 19, 2026, counsel filed the instant Supplemental Motion claiming the defendant received ineffective assistance of counsel at trial because trial counsel purportedly had a conflict interest due to Simpson Thacher's other client representations, which allegedly caused a lapse in representation.

**B.  Simpson Thacher's Other Representations**

In its May 11, 2026 letter, trial counsel set forth in detail the current and past representations by Simpson Thacher that the defendant claims have a connection to PSA. In his Supplemental Motion, the defendant adopts the facts regarding these representations and only disputes whether they constitute a conflict of interest. Accordingly, the undisputed facts regarding Simpson Thacher's other representations are as set forth below.

2

PSA is a division of Collectors Holdings, Inc. ("Collectors"), formerly Collectors Universe. (Simpson Ltr. at 2; Trial Tr. 1437, 1610). In 2021, Collectors was acquired by an investor group consisting of Nat Turner, D1 Capital Partners L.P. ("D1 Capital"), and Cohen Private Ventures, LLC ("CPV"). (Simpson Ltr. at 2).[1] Simpson Thacher "has never had a client relationship with PSA, Collectors, Nat Turner, or CPV," nor has it ever had a client relationship with Steve Cohen. (Simpson Ltr. at 2, 3).

D1 Capital is a former client of Simpson Thacher. However, Simpson Thacher did not represent D1 Capital in connection with its investment in Collectors, and the firm's representation concluded in January 2021, one month before the acquisition of Collectors was announced in February 2021. (Simpson Ltr. at 2). In other words, Simpson's Thacher representation of D1 Capital predated, and was entirely unrelated to, any possible indirect interest of D1 Capital in PSA through Collectors.

Simpson Thacher currently, and while representing the defendant, represented Point72 Asset Management, L.P. ("Point72"), a hedge fund founded by Steve Cohen. (Simpson Ltr. at 3). CPV is distinct from Point72 and invests long-term capital, primarily in direct private investments, on behalf of Steve Cohen personally. (*Id.*).[2] Simpson Thacher represents Point72 in "matters wholly unrelated to the trial" of the defendant. (*Id.*)[3] Point72 has no ownership interest, direct or indirect, in PSA or Collectors.

---

[1] *Citing Investor Group Led by Nat Turner Completes Acquisition of Collectors Universe* (Feb. 22, 2021), https://www.businesswire.com/news/home/20210222005284/en/Investor-Group-Led-by-Nat-Turner-Completes-Acquisition-of-Collectors-Universe.

[2] *Citing* Cohen Private Ventures, LLC, LinkedIn (last accessed May 5, 2026), https://www.linkedin.com/company/cohen-private-ventures.

[3] Trial counsel cited two other representations in its letter that the defendant does not cite in support of his Supplemental Motion. First, Simpson Thacher formerly represented S.A.C. Private Capital Group, a Steve Cohen company, in connection with its recapitalization of Cosmos Bank, Taiwan in 2007, which representation ended in 2015. (Simpson Ltr. at 2). Second, Caroline Geiger, a

### C. Defense's Treatment of PSA at Trial

At trial, counsel aggressively litigated and made arguments seeking to discredit PSA and suggest that PSA retaliated against the defendant for his efforts to purportedly "expose" PSA by falsely alleging that the defendant sold cards with fake PSA grades. Trial counsel pushed these arguments repeatedly at every stage of the trial.

As an initial matter, trial counsel moved *in limine* to present evidence that would purportedly call into question PSA's reliability and credibility as a grader. (ECF No. 60 (defendant's omnibus motion *in limine*); *see* ECF No. 66 (defendant's opposition to the Government's motions *in limine*)). The Government moved to preclude such evidence and argument on the basis that it would be irrelevant and could result in a mini-trial. (ECF No. 64 (Government's motions *in limine*)). The defendant moved separately to present evidence that the defendant subjectively believed that PSA was biased against him and that its grading operations were suspect, arguing that would bolster the defense that the defendant's apparent manipulation of PSA's grades were part of a plan to expose PSA's dubious practices against him and its erratic grading system, rather than part of the fraud conduct charged. (Final Pretrial Conference ("FPTC") Tr. 32:23-33:11; *see* ECF No. 60; *see also* ECF No. 66). In further support of the defendant's motion *in limine*, the defendant filed a letter on January 7, 2026, seeking to admit evidence of the defendant's state of mind regarding the unreliability of the PSA grading process, and evidence that would tend to undermine juror confidence in PSA's grading. (ECF No. 73). At the final pretrial conference, trial counsel argued vigorously to admit evidence of PSA's alleged misconduct and

---

partner at Simpson Thacher, represented CPV at her prior firm on matters unrelated to Collectors, and the client relationship did not continue when Ms. Geiger joined Simpson Thacher in February 2025. (Simpson Ltr. at 3). There is no connection between these representations, on the one hand, and PSA and the defendant's criminal case, on the other hand, and they obviously do not constitute a conflict.

"fallibility" as relevant to the defendant's state of mind. (*See, e.g.*, FPTC Tr. at 24:17-28:14, 30:4-33:11, 31:7-14, 34:9-37:9).

The Court denied the defendant's *in limine* motions in part, ruling, in sum and substance, that evidence that would purportedly call into question PSA's reliability and credibility as a grader would be irrelevant because the jury was being asked to pass judgment on the defendant's conduct, not PSA's. (ECF No. 80; *see* Trial Tr. 177:19-179:11 ("…PSA is not on trial here…")). But the Court allowed evidence "of PSA's practices and . . . so-called misconduct as it goes to [the defendant's] intent." (Trial Tr. 178:12-15). With this ruling, throughout trial, the defendant repeatedly introduced evidence and made arguments seeking to discredit PSA and show that, in response to the defendant's efforts to expose PSA, PSA had purportedly retaliated by falsely alleging the defendant fabricated card grades.

The defendant's opening statement clearly set forth this narrative of PSA as unreliable and corrupt as the core of the defense. Trial counsel sought to depict the defendant as the victim of "a corporate giant" that purportedly had unilaterally, unfairly, and with no reason cut the defendant out of the trading card market and ruined his reputation. (*See* Trial Tr. 81:6-13; 82:14-20 ("PSA can decide to stop working with you or to treat you differently from everyone else for whatever reason it wants or for no reason at all. And that, as you will hear, is what happened to Mr. Curcio."); 86:3-13 ("It was as if in this moment PSA was the prosecutor, the judge, and the jury all in one. And remember what I told you a few minutes ago. PSA dominates the sports card market. It is the proverbial 600-pound gorilla. If PSA tarnishes a collector's reputation, it can end his ability to buy, sell, or trade cards, and destroy his livelihood in the process."); 87:10-17 ("The evidence will show that [the defendant] threatened legal action against PSA, and the evidence will show that he told PSA itself that he would expose its flawed grading system for all the world to see. He wanted

5

to show that PSA was simply a house of cards."); 88:24-89:5 (the defendant "wanted to expose PSA both for its actions towards him specifically and to show that PSA's entire grading business model was a sham; again, a house of cards. PSA was unreliable, it was untrustworthy, it was corrupt"); 89:13-15 ("Now, eventually the Justice Department charged [the defendant], and because they saw the world through PSA-colored glasses, they built a case that has holes.")).

Throughout the trial, counsel presented numerous instances of the defendant's concerns about PSA to the jury—often over the Government's objection—as evidence of his purported lack of fraudulent intent. (*See, e.g.*, Defense Exs. A83, A113; Trial Tr. 919:18-924:24 (questioning Iosif Bondarchuk about the defendant's PSA-related grievances despite Government's objection)). Trial counsel also cross-examined the PSA witness, Jackie Curiel, thoroughly on issues regarding the reliability of PSA's grading, anomalies in PSA's card holders, purported mistakes PSA has made verifying the authenticity of its grades and holders, whether PSA treated the defendant unfairly, whether the Government's investigation was outsourced to PSA, and PSA and Curiel's purported bias against the defendant. (*See, e.g.*, Trial Tr. 1622:24-1624:24 (PSA worked with FBI and spoke to victims); 1636:5-1639:10, 1641:6-16 (subjectivity of PSA grading); 1639:19-1640:12 (casting doubt on the qualifications of PSA graders); 1642:25-1643:9 (clerical errors in the PSA grading process); 1643:17-22 (physical defects in PSA card holders); 1645:25-1646:9 (same card given different PSA grade); 1648:17-1649:22 (deactivating the defendant's cards on PSA's website based only on photos); 1655:2-1656:1, 1657:10-1658:14 (PSA's alleged mistakes when reholdering); 1701:1-1704:24 (the defendant told PSA it wrongfully kept his property and he would bring legal action and make a documentary to expose PSA's supposed bad practices); 1705:5-11 (PSA stopped doing business with the defendant after his threats to expose PSA); 1705:12-1706:17 (PSA kept the defendant's graded cards for months over his objection and

6

returned them raw); 1708:20-1709:10 (PSA did not do a blind review of the defendant's cards); 1715:9-19 (PSA had "a stake in removing a bad actor from the marketplace.")).

In closing arguments, defense counsel reiterated and expanded on the narrative set forth in openings: PSA was unreliable; PSA had treated the defendant unfairly and did not like the defendant; the defendant sought to expose PSA's failings and mistreatment of him; PSA retaliated by referring the defendant for prosecution; and, the Government's case was flawed because it relied on PSA too much in its investigation. (*See, e.g.*, Trial Tr. 1873:7-14, 1928:5-11 (Government outsourced its investigation to PSA); 1883:25-1884:5, 1886:2-10 (PSA had a monopoly); 1928:17-24, 1929:1-12 (PSA's grading was subjective and inaccurate); 1891:4-20 (PSA treated the defendant unfairly); 1893:25-1894:24 (PSA did not like the defendant and wanted him convicted); 1894:21-25 (PSA "blacklist[ed]" the defendant)). In other words, discrediting PSA and PSA's purported reprisal against the defendant was the predominant theme throughout the defense.

### D.  Supplemental Rule 33 Motion

On June 19, 2026, the defendant filed the instant Supplemental Motion, arguing that a new trial is warranted on the basis that his trial counsel, Martin Bell, had a conflict of interest arising from Simpson Thacher's current and former client representations. (Mot. at 2). The defendant claims that Simpson Thacher had a conflict of interest, or that there was the "specter" of a conflict of interest, because of the firm's (1) prior representation, in unrelated matters, of D1 Capital—which later became an investor in Collectors, and (2) simultaneous representation, in unrelated matters, of Point72—which is owned by Steve Cohen, who is also the owner of a separate entity named CPV that is an investor in Collectors. (Mot. at 5-6). The defendant further argues that trial counsel had a purported duty to notify the Court before trial that it was conducting conflict checks, that the Court should have conducted a *Curcio* hearing prior to trial, and that these alleged failures rendered counsel ineffective and merit a new trial. (Mot. at 6-7). Lastly, the defendant asserts that,

because of the purported conflict, trial counsel failed to use some unspecified evidence and make unspecified arguments that would have "expos[ed] PSA as untruthful and expos[ed] PSA's attack" on the defendant, showing the alleged conflict caused a lapse in representation. (Mot. at 8-10).

**ARGUMENT**

The defendant's Supplemental Motion is meritless. The Court should deny the defendant's request for a new trial. Simpson Thacher's prior and simultaneous representations were clearly not a conflict of interest. Because those representations did not constitute even a possible conflict, trial counsel had no duty to report those representations to the Court, nor would the Court have needed to conduct a *Curcio* hearing. Nor did the purported conflict impact trial counsel's performance in any way, including specifically with respect to the defense strategy of discrediting PSA and the PSA witness who testified at trial. Indeed, as reflected in the trial record and summarized in trial counsel's May 11, 2026 letter, trial counsel aggressively pursued a defense strategy that sought to discredit PSA and show that PSA had wrongly targeted the defendant for engaging in fraud. The defendant's vague, unsubstantiated assertion in his Supplemental Motion that "he provided specific evidence" "that would have exposed PSA's inability to be truthful and its calculated attack on" the defendant, (Mot. at 9), does not show that trial counsel failed to pursue a defense strategy or tactic because of a purported conflict.

### A.  Applicable Law

#### 1.  Federal Rule of Criminal Procedure 33

A defendant "is entitled to a fair trial but not a perfect one, for there are no perfect trials." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 553 (1984).[4] Pursuant to Federal Rule of Criminal Procedure 33, the Court "may vacate any judgment and grant a new trial if the

---

[4] Unless otherwise indicated, case citations herein omit internal quotation marks, citations, footnotes, and previous alterations.

8

interest of justice so requires." Fed. R. Crim. P. 33(a). Courts "exercise Rule 33 authority sparingly" and only in "the most extraordinary circumstances." *United States v. Cote*, 544 F.3d 88, 101 (2d Cir. 2008). "It is well settled that motions for new trials are not favored and should be granted only with great caution." *United States v. Costello*, 255 F.2d 876, 879 (2d Cir. 1958).

Because "motions for a new trial are disfavored in the Second Circuit," *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995), a district court, after examining the totality of the evidence and considering objectively all of the facts and circumstances, should grant the motion only if the court finds "a real concern that an innocent person may have been convicted." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992); *see also United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) ("[B]efore ordering a new trial pursuant to Rule 33, a district court must find that there is 'a real concern that an innocent person may have been convicted.'" (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001))). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33." *McCourty*, 562 F.3d at 475.

"Rule 33 motions are granted only in 'extraordinary circumstances,' and are committed to the trial court's discretion." *McCourty*, 562 F.3d at 475 (citing *United States v. Torres*, 128 F.3d 38, 48 (2d Cir. 1997)); *see also Sanchez*, 969 F.2d at 1414 (discretion to grant a new trial under Rule 33 should be exercised "sparingly"). The Second Circuit will reverse a district court's denial of a new trial motion only upon a finding that it abused its discretion. *See United States v. Farhane*, 634 F.3d 127, 168 (2d Cir. 2011). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Ferguson*, 246 F.3d at 134; *United States v. Snype*, 441 F.3d 119, 140 (2d Cir. 2006). In short, "[i]t is only when it appears that an injustice has been done that there is a need for a new trial 'in the interest of justice.'" *Sanchez*, 969 F.2d at 1414.

9

### 2. Conflict of Interest

"The Sixth Amendment guarantees a criminal defendant the right to counsel, and with that guarantee comes the correlative right that such representation be free from conflicts of interest." *United States v. Feyrer*, 333 F.3d 110, 115 (2d Cir. 2003). There are three kinds of conflicts of interest that can arise during the representation of criminal defendants: "(1) a *per se* conflict requiring automatic reversal without a showing of prejudice; (2) an actual conflict of interest that carries a presumption of prejudice; and (3) a potential conflict of interest that requires a finding of both deficient performance by counsel and prejudice, under the standard established in *Strickland*." *Burke v. United States*, No. 20-4034, 2022 WL 175488, at *2 (2d Cir. Jan. 20, 2022) (citing *United States v. John Doe No. 1*, 272 F.3d 116, 125 (2d Cir. 2001)).

A *per se* conflict is limited to "(1) where trial counsel is not authorized to practice law or (2) where counsel is implicated in the crime for which the defendant is on trial." *United States v. John Doe No. 1*, 272 F.3d at 125; *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000). "[A]n *actual* conflict of interest occurs when the interests of a defendant and his attorney 'diverge with respect to a material factual or legal issue or to a course of action.'" *United States v. Williams*, 372 F.3d 96, 102 (2d Cir. 2004) (quoting *United States v. Schwarz,* 283 F.3d 76, 91 (2d Cir. 2002)); *Armienti*, 234 F.3d at 824. A potential conflict exists "if the interests of the defendant *could* place the attorney under inconsistent duties in the future." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004); *Mickens v. Taylor*, 535 U.S. 162, 171-72 (2002). Here, the defendant claims his trial counsel suffered from an actual conflict of interest. (*See* Mot. at 2 ("There *was* a lapse of representation, as [the defendant's and Simpson Thatcher's] interests *were* diverged" (emphasis added)).

10

"In order for a defendant to prevail on a claim that he was denied effective assistance of counsel based on counsel's actual conflict, the defendant must . . . establish that (a) counsel actively represented conflicting interests, and (b) such conflict adversely affected his lawyer's performance." *Feyrer*, 333 F.3d at 116. It is the defendant's burden to prove an actual conflict of interest to support an ineffective assistance of counsel claim under the Sixth Amendment. *See id.* at 117; *see also United States v. Lemay*, No. 21 Cr. 00573 (MKV), 2026 WL 18625, at *14 (S.D.N.Y. Jan. 2, 2026).

As to part (a) of the analysis, as stated above, counsel represents conflicting interests when the interests of the attorney and defendant "diverge with respect to a material factual or legal issue or to a course of action." *Schwarz,* 283 F.3d at 91. "That is, that the incentives for lawyer and client were '*inherently* in conflict,' or misaligned, due to an 'attorney's other loyalties.'" *United States v. Hild*, 644 F. Supp. 3d 7, 35 (S.D.N.Y. 2022), *aff'd*, 147 F.4th 103 (2d Cir. 2025) (quoting *Schwarz*, 283 F.3d at 92). An actual conflict of interest does not present grounds for a new trial, however, if it does not rise to more than "a mere theoretical division of loyalties." *Feyrer*, 333 F.3d at 116.

As to part (b) of the analysis, to obtain a new trial, "a defendant must prove that the conflict manifested itself as 'an actual lapse in representation.'" *Feyrer*, 333 F.3d at 116. To prove a lapse in representation, "a defendant must demonstrate that some plausible alternative defense strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Id.* Notably, "the defendant must show causation," meaning the attorney's conflict of interest was the reason the alternative defense was not pursued. *Burke*, 2022 WL 175488, at *2.

11

**B. Curcio's Trial Counsel Did Not Have a Conflict of Interest That Caused a Lapse in Representation**

Trial counsel did not labor under a conflict of interest due to Simpson Thatcher previously representing D1 Capital and simultaneously representing Point72. These other representations by different attorneys at the firm—which were wholly unrelated to the defendant's criminal case and extremely attenuated to non-party PSA—did not create divergent interests between the defendant and his trial counsel. Simpson Thatcher's prior representation of D1 Capital and simultaneous representation of Point72 obviously do not create conflicts of interest due to the extreme distant relationship between those representations, on the one hand, and PSA and this criminal case, on the other hand. Moreover, the Court did not ignore a purported conflict in failing to hold a *Curcio* hearing—rather, no potential conflict was raised to the Court's attention because there was none. Thus, the fact that the Court did not conduct a *Curcio* hearing prior to trial is not a basis for granting a new trial. Lastly, Simpson Thatcher's other representations did not cause trial counsel to forgo attacking PSA's credibility as a trial strategy. Indeed, the defendant fails to identify with any specificity what additional evidence trial counsel could have admitted or what more trial counsel could have done to pursue the strategy that PSA lacked credibility and purportedly falsely accused the defendant of fraud.

### 1. Trial Counsel Did Not Have an Actual Conflict of Interest

In his Supplemental Motion, the defendant claims that Simpson Thatcher's prior representation of D1 Capital and concurrent representation of Point72 created a conflict of interest between himself and his trial counsel, or presented the "specter" of a conflict of interest, merely because those clients have a distant and indirect "connection to PSA." (Mot. at 5-6, 8). The defendant, however, has not demonstrated that his and his trial counsel's interests diverged due to Simpson Thatcher's other client representations.

12

Any connection between Simpson Thatcher's former representation of D1 Capital and concurrent representation of Point72 was too attenuated from PSA and the conduct at issue in the defendant's criminal case to have caused the defendant and trial counsel's interests to diverge. PSA is not a party to the criminal case. PSA is only relevant because the defendant chose to create and sell counterfeit PSA holders and labels to conduct his scheme. Thus, one PSA employee testified at trial as a prosecution witness to explain the distinct physical features of card holders and labels with authentic versus inauthentic PSA grades, and the defendant's trial strategy was primarily to claim that his conduct was an effort to "expose" PSA in some way. In other words, the purported conflict relates entirely to a non-party. And trial counsel's purported conflict relationship is even more attenuated than that. The purported conflict is that Simpson Thatcher: (1) previously represented a company in an unrelated matter that later became an investor in the parent company of PSA, a non-party, and (2) concurrently represented a company in an unrelated matter that was owned by the same person who owned a separate company that was an investor in the parent company of non-party PSA. These representations are too attenuated from PSA and the criminal case by subject matter, relationship—and with respect to D1 Capital, time—to make trial counsel and the defendant's "incentives" with respect to PSA—or any other issue—to be "inherently in conflict." *Schwarz*, 283 F.3d at 92; *see also United States v. Leon-Lopez*, 891 F. Supp. 138, 148 (S.D.N.Y. 1995), *aff'd sub nom. United States v. Alvarez-Buitrago*, 101 F.3d 109 (2d Cir. 1996) (finding no conflict where attorney represented defendant and previously represented a different defendant on narcotics charges resulting from the same undercover investigation because the only connection was defendants were targeted in the same undercover operation but defendants did not know each other and were charged in separate indictments). Indeed, Curcio cites no criminal cases, nor is the Government aware of any, finding an actual

13

conflict to have existed based on an analogous attenuated connection—namely, three degrees of separation between trial counsel's concurrent representation of a company and another corporate entity that provided a prosecution witness.

Because of this attenuated connection, these representations also did not constitute a conflict under the New York Rules of Professional Conduct. Trial counsel did not represent—and thus had no duty of loyalty to—every independent entity that Steve Cohen owned or had invested in simply because Simpson Thatcher represented one of his separate corporate entities. *See* New York Rules of Professional Conduct, Rule 1.7, Cmt. 34 ("A lawyer who presents a corporation or other organization does not, simply by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary"). Likewise, trial counsel had no duty of loyalty to D1 Capital in connection with its investment in the parent company of PSA because Simpson Thatcher formerly represented D1 Capital in an unrelated matter. *See* Rule 1.9 (only precluding representation when the former representation was "in the same or a substantially related matter in which [the new client's] interests are materially adverse to the interests of the former client.").

Although it is his burden, the defendant in his Supplemental Motion provides no reason or proof why Simpson Thatcher's other unrelated representations would create a divergence in trial counsel and the defendant's interests to pursue a trial strategy of discrediting PSA. The defendant has not shown that trial counsel owed any duty to PSA or Collectors or that trial counsel had any financial incentive *not* to discredit PSA. Indeed, the defendant has not demonstrated that his criminal case or his strategy to discredit PSA would impact PSA or Collectors—let alone D1 Capital or Point72—in any way. *Cf. Schwarz,* 283 F.3d at 91-92 (finding actual conflict where attorney represented assault defendant, who was a police officer, and signed retainer with police

14

union because defendant had a strategic interest in implicating another officer in the assault, which could have harmed the union and its defense against the victim's civil suit). At best, the defendant has argued for "a mere theoretical division of loyalties." *Feyrer*, 333 F.3d at 116.

### 2.    Failure to Conduct a *Curcio* Hearing Is Not a Basis for a New Trial

The defendant argues in his Supplemental Motion that the Court should grant a new trial because the Court failed to hold a *Curcio* hearing to investigate the "specter" of conflict of interest. (Mot. at 2, 6-7). The fact that the Court did not conduct a *Curcio* hearing prior to trial is not a basis for a new trial both because the Court was not put on notice of a purported conflict and because there was no purported conflict of which the Court should have been put on notice.

"When a possible conflict has been entirely ignored" by the district court, then "reversal is automatic." *United States v. Levy*, 25 F.3d 146, 153-54 (2d Cir. 1994). But this "automatic reversal rule applies only when a district court . . . fails to conduct an inquiry after either a timely conflict objection or if the [district] court knows or reasonably should know a particular conflict exists." *Id.* at 154. Here, neither the district court (nor the Government) knew before trial about Simpson Thatcher's prior representation of D1 Capital or its simultaneous representation of Point72. That information first came to the Court's (and the Government's) attention long after trial in the defendant's and trial counsel's *ex parte* letters submitted in May 2026. Accordingly, the so-called "failure" to conduct a *Curcio* hearing prior to trial is not an automatic basis for a new trial. *See United States v. Garcia*, No. 21 Cr. 412 (JSR), 2024 WL 2032990, at *6 (S.D.N.Y. May 7, 2024), *aff'd*, No. 24-1673, 2026 WL 817711 (2d Cir. Mar. 25, 2026) ("Because the Court was not aware of any alleged conflict of interest, the failure to investigate the conflict of interest and conduct a *Curcio* hearing is not a basis for granting a new trial."). Moreover, for the reasons explained above, because Simpson Thatcher's former representation of D1 Capital and concurrent representation of Point72 obviously do not create a conflict in the defendant's criminal case, trial

15

counsel had no duty to notify the Court of those representations.[5] *See People v. Watson*, 26 N.Y.3d 620, 625 (2016) ("The court may appropriately place great weight upon counsel's representations regarding the presence or absence of a conflict . . . because the attorney is generally in the best position to determine when a conflict of interest exists or is likely to develop during trial.") (citing *Holloway v. Arkansas*, 435 U.S. 475, 485 (1978)).

### 3.  Trial Counsel's Performance Was Not Adversely Affected

Even assuming a conflict existed—which it did not—trial counsel's performance was in no way adversely affected. The defendant suggests that had trial counsel not suffered from a conflict of interest, trial counsel would have introduced evidence and cross-examined the PSA witness to discredit PSA and expose PSA's bias and "attack" of the defendant. (Mot. at 8, 9). But, as described at length above and in trial counsel's May 11, 2026 letter, trial counsel did focus extensively on these issues throughout trial within the bounds permitted by the Court's motion *in limine* ruling. *See United States v. Stantini*, 85 F.3d 9, 18 (2d Cir. 1996) (finding no conflict where counsel represented defendants in two separate cases implicated in the same murder in part because counsel did, in fact, pursue the defense strategy the defendant later claimed counsel had ignored because of the purported conflict). The defendant does not identify what more trial counsel could have done to advance this defense strategy and instead vaguely alleges that there was some unidentified "specific evidence" trial counsel did not use to further this defense strategy.[6] With only this nebulous claim, the defendant does not meet his burden to show that a "plausible

---

[5] The defendant suggests that the mere fact that trial counsel conducted a conflict check indicates counsel should have notified the Court of a "specter" of a conflict. (Mot. at 6-7). This argument is untenable. Every responsible law firm performs conflict checks at the intake of every case. Conducting a conflict check does not mean there was a possible conflict. The defendant's argument would lead to the absurd result that courts be notified and a *Curcio* hearing held for every criminal representation.

[6] Notably, the defendant does not provide an affidavit in support of his motion.

16

alternative defense strategy or tactic might have been pursued." *See Hild*, 644 F. Supp. 3d at 42 (finding defendant failed to establish a conflict of interest because the defendant offered no evidence as to what the defense might have entailed, how it would have aided the defense, or how a failure to mount such a defense was due to the alleged conflict).

Moreover, the defendant has not demonstrated that trial counsel's alleged failure to further pursue a strategy of discrediting PSA was *caused by* counsel's purported conflict. To the contrary, the trial record is clear that the Court ruled in response to motions *in limine* that evidence of PSA's "misconduct"—as defense called it—that did not relate to the defendant's intent was inadmissible because "PSA is not on trial here, and thus, it's not relevant." (Trial Tr. 178:12-179:11). The Court's evidentiary ruling—not the purported conflict—was the reason trial counsel was limited as to what evidence the defense could use to discredit PSA. The defendant thus has not shown that counsel failed to pursue a defense strategy *because of* a conflict. *See Feyrer*, 333 F.3d at 118 (defendant failed to prove an actual conflict of interest in part because the purported plausible alternative defense strategy to call a witness was not caused by the alleged conflict but the witness's involvement in the underlying facts and decision to invoke his Fifth Amendment rights; "beyond bald assertions," the defendant presented no evidence that counsel failed to pursue the witness's testimony because of an actual conflict of interest).

In sum, trial counsel was not ineffective due to a conflict of interest. There was no conflict of interest arising from Simpson Thatcher's former representation of D1 Capital or its concurrent representation of Point72, nor did the purported conflict adversely impact trial counsel's

17

performance so that it caused counsel to forgo a viable defense strategy. On the contrary, trial counsel was highly effective and "did an excellent job." (Trial Tr. 2086:22).[7]

### **CONCLUSION**

For the foregoing reasons, the Government respectfully submits that the defendant's Supplemental Motion is without merit and should be denied.

Dated:    New York, New York
          June 26, 2026

                                        Respectfully submitted,

                                        JAY CLAYTON
                                        United States Attorney
                                        Southern District of New York

                              By:         /s/
                                        _____
                                        David R. Felton
                                        Kingdar Prussien
                                        Cecilia Vogel
                                        Assistant United States Attorneys
                                        (212) 637-2299/-2223/-1084

---

[7] The Court should deny the Supplemental Motion based on the current factual record. If, however, the Court believes it needs additional information to resolve the Supplemental Motion, the Court should order the defendant to waive privilege so that trial counsel may provide an affidavit setting forth additional information relevant to the Motion. *See, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword. . . . Thus, the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."); *Frias v. United States*, No. 1 Cr. 307 (JFK), 2009 WL 1437797, at *1 (S.D.N.Y. May 20, 2009) (granting Government's request for an order that petitioner waived attorney-client privilege over communications with counsel that were relevant to petitioner's ineffective assistance of counsel claims); *United States v. Israel Garcia*, No. 21 Cr. 412 (JSR) (S.D.N.Y.), Dkt. No. 334 (same for an ineffective assistance claim on a Rule 33 motion).

18